UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

In the Matter of the Extradition of )
) Case No. 21-mj-4149
Riccardo Paolo Spagni a/k/a Ricardo Paolo Spagni ) U.S. Magistrate Judge Alistair Newbern

**MEMORANDUM OF EXTRADITION LAW
AND REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS**

The United States, in executing its treaty responsibilities and acting at the request of the Government of South Africa, urges that the fugitive, Riccardo Paolo Spagni a/k/a Ricardo Paolo Spagni ("Spagni" or "the fugitive"), be held without bond pending his extradition proceedings pursuant to 18 U.S.C. §§ 3181 *et seq.* This memorandum summarizes the framework of U.S. extradition law and sets forth the reasons why this Court should order Spagni's detention. In short, Spagni cannot overcome the strong presumption against bail in international extradition cases. Specifically, he cannot meet his burden of showing that he poses no risk of flight or danger to the community and that special circumstances exist warranting his release.

## BACKGROUND

The Government of South Africa seeks Spagni's provisional arrest with a view toward his extradition to stand trial for fraud. On July 20, 2021, this Court issued a warrant to arrest Spagni for the aforementioned offense.

According to the information the Government of South Africa has provided:

There is an extradition treaty in force between the United States and South Africa. *See* Extradition Treaty Between the Government of the United States of America and the Government of the Republic of South Africa, U.S.-S. Afr., Sept. 16, 1999, S. TREATY DOC. NO. 106-24 (2000) (the "Treaty"). The Treaty provides in Article 13 for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and

supporting documents. In accordance with Article 13 of the Treaty, the Government of South Africa has asked the United States for the provisional arrest of Riccardo Paolo SPAGNI a/k/a Ricardo Paolo Spagni ("SPAGNI" or the "fugitive") with a view toward his extradition.

According to the information provided by the Government of South Africa, SPAGNI committed fraud, in violation of South African common law. This offense was committed within the jurisdiction of South Africa. On April 19, 2021, the Magistrate Court of the District of Cape Town, South Africa, issued a warrant for SPAGNI's arrest.

The warrant issued on the basis of the following facts:

SPAGNI was employed by Cape Cookies CC ("Cape Cookies") from October 1, 2009, to June 8, 2011 as its Information Technology Manager (IT Manager). SPAGNI's employment with Cape Cookies terminated by mutual agreement.

As an employee of Cape Cookies, SPAGNI intercepted invoices from another company, Ensync, relating to information technology goods and services it had supplied Cape Cookies. SPAGNI knowingly used false information to fabricate similar invoices purporting to be from Ensync, relying on details including this company's Value Added Tax (VAT) number and bank account information. SPAGNI then inflated the prices for the goods and/or services.

SPAGNI knowingly submitted the falsified invoices to Cape Cookies' finance department and fraudulently represented that they were true and proper records, expecting that the amount listed as due would be paid to the supplier reflected, and into the bank account detailed, on the invoice.

Cape Cookies paid each invoice by means of electronic transfer of funds into the bank account details reflected on the false invoice submitted by SPAGNI.

The investigation revealed that the invoices did not contain the true bank account of Ensync but, rather, a bank account opened and controlled by SPAGNI. The investigation further revealed that Ensync's actual invoices for the goods and services supplied, at a lesser amount, had already been paid subsequent to the payment Cape Cookies made for SPAGNI's forged invoices.

SPAGNI also generated false invoices purporting to be from three different suppliers of information technology goods and services. The investigation revealed that these were fictitious entities, finding that no such company names, registration numbers, addresses, or VAT numbers existed. The bank account numbers provided with these false invoices were under the name and control of SPAGNI. SPAGNI submitted these fabricated invoices to Cape Cookies as true and proper documents. In relying on SPAGNI's misrepresentations, Cape Cookies paid each invoice by means of electronic funds transfer into bank accounts SPAGNI controlled.

The evidence indicating that SPAGNI engaged in these frauds consists of witness statements and bank records. This evidence indicates that SPAGNI received 1,453,561.47 South African Rand, or roughly $99,185, as a result of his efforts to defraud Cape Cookies.

SPAGNI was charged in the Western Cape Regional Court, Cape Town for fraud and other charges arising out of these facts. He pleaded not guilty to the charges, and the trial against him was commenced. Evidence was presented against him, but SPAGNI failed to appear in court. South African authorities attempted to locate SPAGNI at his home address and through contacts with his friends and family, but to no avail. Further investigation revealed that SPAGNI had fled South Africa. The trial court issued a warrant for his arrest on April 19, 2021.

Article 2 of the Treaty covers the offense of which SPAGNI is accused. The Government

3

of South Africa has represented that it will submit a formal request for extradition supported by the documents specified in the Treaty, within the time required under the Treaty.

South Africa has requested that the United States provisionally arrest Spagni, with a view toward his extradition, pursuant to Article 13 of the extradition treaty between South Africa and the United States (the "Treaty").[1] The United States, in accordance with its obligations under the Treaty and pursuant to 18 U.S.C. §§ 3181 *et seq.*, filed a complaint in this District seeking a warrant for Spagni's arrest. This Court issued the arrest warrant, and Spagni was arrested on the same day – July 20, 2021. Spagni is currently in the custody of the U.S. Marshals Service.

## ARGUMENT

**I.     LEGAL FRAMEWORK OF EXTRADITION PROCEEDINGS**

**A.     The limited role of the Court in extradition proceedings**

The extradition process is *sui generis*. Extradition is primarily an executive function with a specially defined role for the Court, which statute authorizes to hold a hearing at which it determines whether to certify to the Secretary of State (the "Secretary") that the evidence the requesting country has provided is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see also, e.g.*, *Kastnerova v. United States*, 365 F.3d 980, 984 n.5, 986 (11th Cir. 2004). The Secretary, and not the Court, then decides whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *see also, e.g.*, *Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828-29 (11th Cir. 1993). "This bifurcated procedure reflects the fact that extradition proceedings contain

---

[1] Extradition Treaty Between the Government of the United States of America and the Government of the Republic of South Africa, U.S.-S. Afr., Sept. 16, 1999, S. TREATY DOC. NO. 106-24 (2000) (the "Treaty").

legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the Court's role is limited to considering the requesting country's evidence and determining whether the legal requirements for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case law—have been established. *See Charlton v. Kelly*, 229 U.S. 447, 461 (1913) (analogizing extradition hearing to a preliminary hearing in a criminal case); *Martin*, 993 F.2d at 828-29. If the Court finds that the requirements for certification are satisfied, it must provide the certification to the Secretary, together with a copy of any testimony taken before the Court, and must commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184 (providing that following certification, the extradition judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made"); *Martin*, 993 F.2d at 828.

### B. The requirements for certification

The Court should certify to the Secretary that a fugitive is extraditable when the following elements are present: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the treaty covers the offenses for which extradition is requested; and (5) probable cause exists as to each offense for which extradition is requested. *See, e.g.*, *In re Extradition of Martinelli Berrocal*, No. 17-cv-22197, 2017 WL 3776953, at *10 (S.D. Fla. Aug. 31, 2017); *In re*

5

Case 3:21-mj-04149   Document 3   Filed 07/21/21   Page 5 of 20 PageID #: 10

*Extradition of Shaw*, No. 14-cv-81475, 2015 WL 3442022, at *5 (S.D. Fla. May 28, 2015). The following sections briefly discuss each of those requirements.

        1.      <u>Authority over the proceedings</u>

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. As such, the judicial officer conducting the extradition hearing that Section 3184 prescribes does not exercise "any part of the judicial power of the United States," but rather acts in a "non-institutional capacity by virtue of a special authority." *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (internal quotation marks and citations omitted). Both magistrate judges and district judges may render a certification under Section 3184. *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993). This District's local rules also expressly authorize magistrate judges to "[c]onduct extradition proceedings, in accordance with 18 U.S.C. § 3184." *See* Rule 1(a)(3), Magistrate Judge Rules for the U.S. District Court for the Eastern District of Tennessee.

        2.      <u>Jurisdiction over the fugitive</u>

The Court has jurisdiction over a fugitive, such as Spagni, who is found within its jurisdictional boundaries. *See* 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged.").

        3.      <u>Treaty in full force and effect</u>

Section 3184 provides for extradition in specifically defined situations, including whenever a treaty or convention for extradition is in force between the United States and the requesting state.

6

*See id.* The government will satisfy this requirement at the extradition hearing by offering into evidence a declaration from an attorney in the Office of the Legal Adviser for the U.S. Department of State, attesting that there is a treaty in full force and effect between the United States and South Africa. The Court must defer to the Department of State's determination in that regard. *See, e.g.*, *Arias v. Warden*, 928 F.3d 1281, 1288 (11th Cir. 2019) ("courts *must* defer to the determination of the executive branch in deciding whether an extradition treaty remains in force") (emphasis in original, internal quotation marks and citation omitted); *Martinelli Berrocal*, 2017 WL 3776953, at *11 (noting that "every Circuit Court, including our own, has deferred to the executive branch" on this question) (citing *Kastnerova*, 365 F.3d at 986).

    4.    <u>Crime covered by the treaty</u>

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances the treaty sets forth. Here, the Treaty provides for the return of fugitives charged with, or convicted of, an "extraditable offense" as the Treaty defines that term. *See* Treaty arts. 1–2. The Treaty defines an offense as extraditable if it is "punishable under the laws in both States by deprivation of liberty for a period of at least one year or by a more severe penalty." *Id.* art. 2.[2]

---

[2] An offense is extraditable regardless of whether (a) laws in the Requesting and Requested States place the offence within the same category of offences or describe the offence by the same terminology"; or (b) the "offence is one for which United States federal law requires the showing of such matters as inter-state transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States Federal court." Treaty art. 2(3)(a)–(b). Additionally, if the request for extradition "relates to more than one offence and extradition is granted for an extraditable offence, it shall also be granted for any other offence specified in the request even if the latter offence is punishable by one year's deprivation of liberty or less, provided that all other requirements for extradition are met." *Id.* art. 2(7).

7

Case 3:21-mj-04149   Document 3   Filed 07/21/21   Page 7 of 20 PageID #: 12

In assessing whether the offense for which South Africa has requested extradition meets this dual criminality requirement, the Court should examine the description of criminal conduct that South Africa has provided in support of its request and decide whether that conduct, if it had been committed here, would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *See Arias*, 928 F.3d at 1292-93 (noting that "courts ask whether the conduct that the government describes would violate our laws if it occurred in this country"); *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000); *United States v. Cardoso*, No. 04-mc-128, 2005 WL 1228826, at *3 (M.D. Fla. May 10, 2005) ("Acts are considered criminal in the United States if they would be unlawful under federal statutes, the law of the state where the accused is found, or by a preponderance of the states.") (citing *Wright v. Henkel*, 190 U.S. 40, 61 (1903)). A requesting country need not establish that its crimes are identical to ours. Indeed, "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922).

In fulfilling its function under Section 3184, the Court should construe liberally the applicable extradition treaty in order to effectuate its purpose, namely, the surrender of fugitives to the requesting country. *Factor v. Laubenheimer*, 290 U.S. 276, 299-300 (1933); *see also, e.g.*, *Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) (*en banc*) (stating "default rule" that any ambiguity in extradition treaty must be construed in favor of "facilitat[ing] extradition"). Accordingly, because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers," *Grin v. Shine*, 187 U.S. 181, 184 (1902), the Court should "approach

challenges to extradition with a view towards finding the offenses within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

        5.      <u>Probable cause that the fugitive committed the offense</u>

To certify the evidence to the Secretary, the Court must conclude that probable cause exists to believe that the person before it committed the offense for which South Africa seeks extradition. *Avila-Ramos v. Kammerzell*, 893 F.3d 1243, 1247 (10th Cir. 2018); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1432 (S.D. Fla. 1993). Probable cause exists if the evidence would cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted). The extradition judge's probable cause determination is "not a finding of fact in the sense that the court has weighed the evidence and resolved disputed factual issues," but instead "serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based." *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986) (internal quotation marks omitted); *Martinelli*, 2017 WL 3776953, at *21 (same).

    **C.**    **An extradition hearing follows unique procedures**

As detailed above, the purpose of an extradition hearing is to decide the sufficiency of the charges for which extradition is requested under the applicable extradition treaty; it is not to determine the guilt or innocence of the fugitive—that determination is reserved for the foreign court. *Collins*, 259 U.S. at 316; *see also, e.g.*, *Arias*, 928 F.3d at 1286 ("A United States court dealing with an extradition request for an accused is obliged to resist any temptation to judge the guilt or innocence of the accused.") (internal quotation marks and citation omitted). An extradition hearing is not a criminal proceeding. *See, e.g.*, *Martin*, 993 F.2d at 828. Rather, it is "an

9

administrative proceeding arising under international law for certification and approval of the State Department's decision to extradite this person at the request of a foreign government," *In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1284 (S.D. Fla. 2017); and it is governed by "the general extradition law of the United States and the provisions of the Treaty," *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450-51 (9th Cir. 1987).

Accordingly, the Federal Rules of Criminal Procedure do not apply to extradition proceedings. *See* Fed. R. Crim. P. 1(a)(5)(A) ("Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive."). Moreover, many constitutional protections applicable in criminal cases do not apply to extradition proceedings; for example, the exclusionary rule is not applicable, *see, e.g.*, *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and a fugitive does not have the right to confront his accusers, *see, e.g.*, *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).

Nor do the Federal Rules of Evidence apply to extradition proceedings. *See* Fed. R. Evid. 1101(d)(3) ("These rules—except for those on privilege—do not apply to . . . miscellaneous proceedings such as extradition or rendition."), *see, e.g.*, *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164-65 (11th Cir. 2005). Hearsay evidence is admissible at an extradition hearing, and "[a] certification of extradition may be and usually is based entirely on the authenticated documentary evidence and information provided by the requesting government." *Shaw*, 2015 WL 3442022, at *4; *see also, e.g.*, *Afanasjev*, 418 F.3d at 1165 (unsworn statements may be sufficient to justify extradition) (citing *Collins*, 259 U.S. at 317). Nothing more is required, and typically nothing more is provided. *See, e.g.*, *In re Extradition of Nunez-Garrido*, 829 F. Supp. 2d 1277, 1287 (S.D. Fla. 2011) ("It is exceedingly rare for the Government to submit anything other than documents in

support of an extradition request."); *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993) (police detective's statement summarizing results of investigation established probable cause); *Zanazanian v. United States*, 729 F.2d 624, 627-28 (9th Cir. 1984) (police report describing witness statements is competent evidence). Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing. Indeed, requiring the "demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty." *Bingham*, 241 U.S. at 517.

Relatedly, a fugitive has no right to discovery, *see, e.g.*, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005), and his right to challenge the evidence against him at an extradition hearing is severely constrained, *see, e.g.*, *Nunez-Garrido*, 829 F. Supp. 2d at 1281. A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but rather may only introduce evidence explaining the submitted evidence. *See, e.g.*, *Charlton v. Kelly*, 229 U.S. 447, 461-62 (1913). A contrary rule "might compel the demanding government to produce all its evidence . . . both direct and rebutting, in order to meet the defense thus gathered from every quarter." *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)); *Shaw*, 2015 WL 3442022, at *8.

Courts routinely reject technical and affirmative defenses in extradition proceedings. *See, e.g.*, *Bingham*, 241 U.S. at 517 (rejecting objections to extradition that "savor of technicality"); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (noting that extradition court "properly may exclude evidence of alibi, or facts contradicting the government's proof, or of a defense such as insanity"); *Martinelli Berrocal*, 2017 WL 3776953, at *27 (collecting cases). These issues, which require factual or credibility determinations, are reserved for the courts in the requesting country.

11

### D. Rule of non-inquiry

All matters a fugitive may raise as a defense to extradition, other than those related to the requirements for certification, are to be considered by the Secretary, not by the court. For example, the Secretary should consider any contentions that an extradition request is politically motivated, that the requesting state's justice system is unfair, or that extradition should be denied on humanitarian grounds. *See Martin*, 993 F.2d at 830 n.10 ("We [have] explicitly held that judicial intervention in extradition proceedings based on humanitarian considerations is inappropriate. Rather, humanitarian considerations are matters properly reviewed by the Department of State." (citation omitted)). This practice is consistent with the long-held understanding that surrendering a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State." *In re Kaine*, 55 U.S. 103, 110 (1852).

## II. THE FUGITIVE SHOULD BE DETAINED

Just as extradition hearings follow unique procedures, determining whether to release a fugitive on bail is also *sui generis*. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 *et seq.*, do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not apply because, as explained above, an extradition proceeding is not a criminal case.[3] *See, e.g.*, *In re Extradition of Shaw*, No. 14–mc–81475, 2015 WL 521183, at *4-5 (S.D. Fla. Feb. 6, 2015). Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are

---

[3] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, Spagni is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with an offense in violation of South African law.

12

absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

    A.    **Applicable law**

        1.    <u>A strong presumption against bail governs in an international extradition proceeding</u>

Unlike in domestic criminal cases, "there is a presumption against bond." *Martin*, 993 F.2d at 827; *see also Martinelli Berrocal*, 263 F. Supp. 3d at 1294 ("[A]ny release of a detainee awaiting extradition is largely antithetical to the entire process."). The Supreme Court established this presumption against bail in *Wright v. Henkel*, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the fugitive after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. 40, 62 (1903).

When, as here, a requesting country meets the conditions of the Treaty, the United States has an "overriding interest in complying with its treaty obligations" to deliver the fugitive. *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009); *see also Wright*, 190 U.S. at 62. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. *See Martinelli Berrocal*, 263 F. Supp. 3d at 1306 ("[O]ur Executive Branch has

13

a vested interest in enforcing our own treaty obligations for fear that other treaty partners will refrain from doing so in the future. And a difficult but necessary measure in carrying out that responsibility is to secure a wanted individual and surrender him or her to the foreign jurisdiction.").

      2.      <u>Fugitives must be detained unless they establish "special circumstances" and also demonstrate that they are neither a flight risk nor a danger to the community</u>

Given the strong presumption against bail that the Supreme Court established in *Wright*, fugitives may not be released on bail unless they demonstrate that (1) they are neither a flight risk nor a danger to the community, *and* (2) "special circumstances" warrant their release. *See, e.g.*, *In re Extradition of Kirby*, 106 F.3d 855, 862-63 (9th Cir. 1996); *Shaw*, 2015 WL 521183, at *5; *Martinelli Berrocal*, 263 F. Supp. 3d at 1292.[4] "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In re Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996).

In evaluating a fugitive's risk of flight in the extradition context, courts have considered, among other things, the fugitive's financial means, ties with foreign countries, and incentive to flee based on the severity of the offense. *See, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1304; *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that

---

[4] "[T]here is disagreement among the federal district courts regarding the burden of persuasion that a potential extraditee must satisfy . . . . [Some] courts require the person subject to international extradition to overcome the presumption against bail by presenting clear and convincing evidence that bail is warranted. . . . [and t]here is a negligible minority of courts that have adopted a preponderance of the evidence standard." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 474-75 (S.D. Tex. 2010).

a "well-educated and sophisticated" fugitive facing serious charges in foreign country had both the "incentive and ability to flee" and therefore presented a flight risk). Crucially, the special circumstances inquiry is separate from, and additional to, considerations of the fugitive's flight risk and danger to the community. *See, e.g.*, *Martin*, 993 F.2d at 828 ("[The fugitive] complains only that the district court erred in determining that he was a flight risk. Absent proof of special circumstances, however, Martin is not entitled to bail."); *Salerno v. United States*, 878 F.2d 317, 317-18 (9th Cir. 1989) (low flight risk alone "is not the criteria for release in an extradition case"); *Leitner*, 784 F.2d at 161 ("[e]ven a low risk of flight" is not a circumstance sufficiently "unique" to "be dispositive"). Accordingly, a fugitive who fails to establish special circumstances should be detained even if he is deemed not to be a flight risk or danger to the community.

"[C]ourts consistently agree that special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extraditees." *Shaw*, 2015 WL 521183, at *5 (citation and quotation marks omitted). Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- The complexity of the pending litigation, *see, e.g.*, *Kin-Hong*, 83 F.3d at 525;

- The fugitive's need to consult with counsel, *see, e.g.*, *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992);

- The fugitive's character, background, or ties to the community, *see, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1305; *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017); *Beresford-Redman*, 753 F. Supp. 2d at 1089;

- That the fugitive may have been living openly, *see, e.g.*, *Leitner*, 784 F.2d at 160-61; *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4 (S.D. Fla. Nov. 16, 2009);

15

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, *see, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1301-02; *Noeller*, 2017 WL 6462358, at *8-9; *In re the Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see, e.g.*, *Shaw*, 2015 WL 521183, at *8;

- The fugitive's professional status, *see, e.g.*, *Pelletier*, 2009 WL 3837660, at *3-4 (businessman); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

- The availability of electronic monitoring, *see, e.g.*, *In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997);

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1297-98; *In re Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1070 (C.D. Cal. 2017); and

- The availability of bail for the same offense in the requesting country, *see, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1298-99; *Antonowicz*, 244 F. Supp. 3d at 1070-71; *Kyung Joon Kim*, 2004 WL 5782517, at *2; *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386-87 (D. Nev. 1995).

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration. Such findings are highly case-specific and within the discretion of the Court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

**B.     Analysis**

The Court should detain Spagni without bond because he poses a flight risk and is a potential danger to the community.

*First*, Spagni has a history of failing to appear and evading justice. He failed to appear for trial at the Cape Town Regional Court in the matter underlying the instant request. Further,

16

because he has avoided returning to the relevant court in South Africa, this Court has reason to surmise that he will continue trying to evade justice. *See, e.g.*, *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.") (citing *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir. 1976)); *Beresford-Redman*, 753 F. Supp. 2d at 1091 (finding fugitive to be a flight risk because, among other things, he could have "return[ed] to Mexico and voluntarily surrender[ed], [but] he has not done so").

In the instant case, within the past month, Spagni was confirmed by a United States Marshals Service (USMS) International Investigator to be in the state of New York. Earlier today, Spagni flew from outside of New York City into the Nashville airport (BNA) on a private charter jet shortly after 11 a.m. this morning. The private charter jet was scheduled to fly to Los Cabos, Mexico departing at noon today. While in Nashville, when Spagni deplaned in order for the plane to refuel, Spagni was arrested without incident.

*Second*, Spagni has a strong incentive to flee. Now that he is aware that South Africa seeks his extradition from the United States, he has strong incentive to disappear, whether to a third country or to an underground location within the United states. As noted above, the upcoming extradition proceedings have limited scope and afford Spagni few rights, and the government's burden to establish extraditability is relatively light. *See, e.g.*, *Garcia*, 761 F. Supp. 2d at 483 (finding that fugitive has virtually no incentive to appear at his extradition hearing, where, due to the government's low burden of proof, he faces significant risk of extradition); *In re Extradition*

*of Adame*, Misc. H-13-287, 2013 U.S. Dist. LEXIS 41682, at *7-8 (S.D. Tex. Mar. 25, 2013) (same); *see also, e.g.*, *Shaw*, 2015 WL 521183, at *9 ("[T]he [fugitive] is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee.").

The substantial amount of time Spagni potentially faces if convicted increases his risk of flight. According to the information South Africa has provided, the offense of which Spagni stands accused carries a potential penalty of up to twenty years imprisonment, *See, e.g.*, *Martinelli Berrocal*, 263 F. Supp. 3d at 1305; *Shaw*, 2015 WL 521183, at *9 (noting that "the [fugitive] is facing serious criminal sanctions in Thailand, which fact provides him with a strong incentive to flee"); *cf. United States v. Castiello*, 878 F.2d 554, 556 (1st Cir. 1989) (flight risk based in part on potential sentence of approximately eight to ten years of imprisonment); *United States v. Rankin*, 289 F. Supp. 3d 846, 849 (S.D. Ohio 2017) ("The length of a potential sentence bears on a defendant's risk of flight."). Accordingly, no combination of bail conditions or promises can reasonably ensure his appearance before this Court and the United States' ability to fulfill its treaty obligations to South Africa.

Additionally, Spagni is believed to have significant cryptocurrency assets that would enable him to flee. He reportedly lectures worldwide on topics relating to cryptocurrency, was the lead maintainer of Monero (a cryptocurrency project that aims to obfuscate the linkability of transactions), is believed to have significant crypto-assets, and reportedly has assets including a watch valued at $800,000.

Spagni also presents a danger to the community. *See, e.g.*, *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (noting that "danger may, at least in some cases, encompass pecuniary or economic harm").

The risk of flight that Spagni poses, standing alone, is sufficient for the Court to deny any forthcoming application for bail. Even if the Court were satisfied that Spagni poses neither flight risk nor danger to the community, the government is unaware of any "special circumstances" that would justify bail in this case.[5]

### III. CONCLUSION

For the foregoing reasons, the United States requests that Spagni be detained pending resolution of this extradition proceeding.

Dated: July 20, 2021

Respectfully submitted,

Mary Jane Stewart
Acting United States Attorney

By: /s Joseph P. Montminy
Assistant United States Attorney

---

[5] Should, however, the Court be inclined to grant bail in this case, the government respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances." Moreover, to protect the ability of the United States to meet its treaty obligations to the Government of South Africa, the government also requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was uploaded onto the Court's CM/ECF system and sent via CM/ECF to defense counsel Henry Leventis.

/s Joseph P. Montminy

Assistant United States Attorney