IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In the Matter of the Extradition of | ) | |
| | ) | |
| Riccardo Paolo Spagni a/k/a | ) | 3:21-mj-4149 |
| | ) | |
| Ricardo Paolo Spagni | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION PENDING EXTRADITION HEARING**

Riccardo Paolo Spagni a/k/a Ricardo Paolo Spagni ("Spagni"), through counsel, submits the following Response to Government's Motion for Detention Pending Extradition Hearing.

The government has misstated both the facts and the applicable law in this matter. Indeed, while the government characterizes Spagni's move to the United States as an effort to flee from prosecution in South Africa, the actual underlying facts paint a very different picture. Throughout the decade that South Africa has investigated, charged, dismissed, re-investigated, and re-charged a fatally flawed case[1] against him, Spagni regularly and routinely appeared in South African court and communicated with authorities there regarding both his case and other legal matters upon which South Africa enlisted his assistance. In April of this year, Spagni and his wife moved to New York pursuant to a provisional visa, which he applied for openly and conspicuously and which took months to obtain, so that he could work more closely with his U.S.-based companies.

Similarly, the government's brief argues that it is a virtual legal impossibility for a defendant to be granted bail in an extradition matter. This representation is simply not accurate,

---

[1] As further outlined below, the documentary evidence necessary to prove these criminal allegations against Spagni has long since been destroyed.

as many courts around the country have found "special circumstances" sufficient to grant bail in extradition matters.

As set out below, both the applicable facts and law favor granting Spagni bail while he awaits a final determination on extradition.

I.     **Procedural History**

On July 21, 2021, the United States Attorney's Office for the Middle District of Tennessee filed a Complaint for Provisional Arrest with a View Towards Extradition pursuant to 18 U.S.C. § 3184. (Doc. 1). The Complaint alleges that the Government of South Africa requested the provisional arrest of Spagni on or about April 19, 2021 for fraud that he allegedly committed between 2009 and 2011. (Doc. 1, Page ID # 1-2). Specifically, the Complaint avers, without citation to any supporting documents, that Spagni allegedly submitted falsified and inflated informational technology invoices to his former employer, Cape Cookies, which resulted in Cape Cookies overpaying on the invoices for the personal benefit of Spagni. (Doc. 1, Page ID # 2). The total amount at issue is less than $100,000.00 USD. (Doc. 1, Page ID # 3).

The Complaint further avers that Spagni was charged in the Western Cape Regional Court, pleaded not guilty, and was set for trial but failed to appear.[2] (Doc. 1, Page ID # 3). But the Complaint is silent as to when Spagni was actually charged in the Western Cape Regional Court. The Complaint is similarly silent as to whether, given the COVID-19 pandemic, Spagni was to appear at any such trial remotely, whether his counsel was present at the court hearing, or whether

---

[2] In fact, Spagni did appear for trial on this matter when it was originally set and for numerous days thereafter. The trial was continued, in the midst of the presentation of evidence, on multiple occasions and over a long period of time by both the prosecution and the Court for a variety of reasons, none of which had to do with Spagni's failure to appear. As further detailed herein, Spagni only "failed" to appear on a date that was set by the Court *after* he had already legally left South Africa and began to emigrate to the United States. The April 19, 2021 hearing was not to reconvene trial, but was more akin to a status conference.

Spagni had actual notice of any such trial. The Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings, filed by the government with the Complaint, is similarly silent on these factual issues. (Doc. 3, Page ID # 6-9).

## II.     Relevant Facts

The criminal case in South Africa against Spagni began around October 2011 and stems from an allegation by Cape Cookies, a small technology company that was Spagni's former employer, that he submitted fraudulent invoices to them and directed payment on those invoices to Absa Bank accounts that he allegedly controlled. (**Ex. 1 – Spagni Charge Sheet**). On October 21, 2011, Spagni voluntarily reported to the Maitland Police Station in South Africa, and no further action was taken at that time.

Approximately a year later, on September 13, 2012, the Maitland Police Station requested Spagni's presence again and he once again voluntarily reported. At that time, South African authorities made a decision not to pursue the case after Spagni's legal team pointed to a number of problems with it. The South African authorities subsequently *nolle prossed* the case against Spagni.

Approximately five years later, for no immediately obvious reason, the State prosecutor elected to serve a summons to appear on Spagni in the Cape Town Magistrate's Court on August 24, 2017. Spagni voluntarily appeared and the matter was subsequently moved to Cape Town Regional Court on October 30, 2017.

Between October 30, 2017 and April 7, 2020, a period of two-and-a-half years, Spagni dutifully reported to court to answer the charges against him. As the COVID-19 pandemic erupted around the world, however, and with a particular level of virulence in South Africa, Spagni, through his prior counsel, made clear that he was afraid to travel to and attend court proceedings

given that he suffered from chronic severe asthma and was obese, both of which were identified as placing Spagni "at an extremely high risk of life-threatening complications" from COVID-19. (**Ex. 2 – COVID Related Correspondence with State Advocate Berry**). On June 18, 2020, Spagni's South African counsel provided the State prosecutor with a doctor's note explaining Spagni's reticence to attend in-person court proceedings. *Id.* The parties agreed to delay the matter until October 2020 to accommodate Spagni's medical concerns, and then they agreed to delay the matter again until March 24, 2021 due to the same medical concerns. *Id.* Spagni made clear that he was fully willing to participate in any and all court proceedings remotely. Spagni remained out of custody on his own recognizance throughout the entire proceedings.

While the decades-long prosecution was pending against Spagni, he traveled to and attended conferences relevant to the cryptocurrency and blockchain industries in, among other places, Estonia, the United States, the Netherlands, Germany, Mexico, England, Italy, South Korea, and Switzerland between June 2014 and January 2020. Regardless of these multiple international trips, Spagni always appeared in court when ordered to do so. As COVID-19 began to explode around the world, and given his pre-existing medical conditions, Spagni ceased attending conferences in January 2020. In February 2020, he did, however, prepare to emigrate to the United States under an O-1 Visa for Individuals with Extraordinary Ability or Achievement based on his achievements in the cryptocurrency and blockchain industry.

The United States granted Spagni's O-1 Visa on October 7, 2020 with a validity date from December 1, 2020 through November 30, 2023. (**Ex. 3 – Spagni Form I-797B Notice of Action**). Given the limited time period of the Visa and believing that he could address the Cape Cookies matter in South Africa from abroad given the pandemic's effects on the South African court system, Spagni and his wife departed South Africa en route to New York on March 21, 2021.

Spagni and his wife first arrived in Bermuda and were subjected to a strict quarantine and mandated testing protocols between their arrival on March 22, 2021, and the date they left en route to the United States on April 13, 2021.

On or about March 30, 2021, Spagni, who was in Bermuda, received notice that a court hearing had been set in South Africa on April 19, 2021. In order to fly from Bermuda to South Africa, Spagni and his wife would have had to fly on at least three planes through two different airports for a period of roughly 36 hours to get back to South Africa for the hearing. Spagni and his wife, who were not yet vaccinated and had just finished testing negative for COVID-19 and going through the necessary quarantine process to emigrate to the United States, were deathly afraid of making an immediate return trip that would have doubled their exposure to COVID-19 and potentially jeopardized their emigration to the United States.

For those reasons, Spagni and his wife chose to proceed forward and lawfully enter the United States on April 14, 2021. Spagni made clear that he would have appeared at the April 19, 2021 proceedings via remote video or continue the proceedings until such time as he could safely attend in person and it was his understanding that his South African attorney at the time was going to explore those options with the South African court at the April 19, 2021 hearing. Instead, when Spagni did not show up on April 19, 2021, the State prosecutor issued a warrant for his arrest. On that date, the State informed the Court that it had made various attempts to locate Spagni to inform him of the next court dates but could not do so. This was an odd representation to the Court given that the National Prosecuting Authority and Cape Town Directorate for Priority Crime Investigation had been in contact with Spagni in March 2021 requesting that Spagni assist South African authorities with an Interpol matter. (**Ex. 4 – March 1, 2021 Email Exchange Between Colonel Esterhuyse and Advocate Burke**). Spagni agreed to assist the South African authorities

and provided his telephone number, email address, and his secretary's telephone number so that he could be contacted. None of these avenues of contact were tried before the April 19, 2021 warrant was issued.

Since arriving in April, Spagni has established strong ties to the United States. He and his wife have obtained New York driver's licenses, purchased two residences in up-state New York, and placed utility bills in Spagni's name. (**Ex. 5 – Spagni's Central Hudson Power Bills**). Moreover, Spagni is the co-founder and Chief Technology Officer for Tari Group, a U.S.-based blockchain development company with over 20 employees and contractors throughout the United States, including several here in Middle District of Tennessee. Both Spagni's business and personal life are now firmly located in the United States.

### III. Argument

The government's motion for detention is based on razor-thin facts that fail to explain the basic what, when, where, how, and why of Spagni's allegedly extraditable crimes in South Africa. The motion is also a one-sided legal treatise that attempts to artificially constrain the Court's discretion to award Spagni bail while he awaits the resolution of his extradition hearing. In the course of its 19-page memorandum, the government spends only about two pages analyzing the individual and particular facts of Spagni's case, and they are riddled with self-serving conclusions devoid of any corroboration. Put simply, the government's motion for detention is unsupported by both fact and law, and the Court should permit Spagni out on bond pending resolution of his extradition hearing.

#### A. The Court Has the Discretion to Release Spagni on Bond Pending His Extradition Hearing.

Although the federal statute that governs the United States' extradition treaties with other nations, 18 U.S.C. § 3184, does not provide for bail, federal courts have the power to grant bail in

international extradition cases where "special circumstances" exist. *See Wright v. Henkel*, 190 U.S. 40, 63 (1903) ("We are unwilling to hold that the circuit courts possess no power in respect of admitting to bail other than as specifically vested by statute . . . ."); *Matter of Extradition of Nagy*, No. 1:17mj3283, 2017 WL 6558487, at *4 (N.D. Ohio, Dec. 21, 2017) ("There can be no dispute that the court has the power to grant bail provided that special circumstances exist."); *In re Extradition of Chapman*, 459 F.Supp.2d 1024, 1026 (D. Haw. 2006). "Special circumstances" are limited to situations in which the "justification [for release] is pressing as well as plain." *U.S. v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (citations omitted); *see also U.S. v. Castaneda-Castillo*, 739 F.Supp.2d 49, 56 (D. Mass. 2010). However, there "need not be one overriding circumstance justifying an extraditee's release on bail" and the "cumulation of several factors can constitute special circumstances that justify bail in extradition proceedings." *Matter of Extradition of Morales*, 906 F.Supp. 1368, 1373 (S.D. Cal. 1995); *see U.S. v. Ramnath*, 533 F.Supp.2d 662, 666 (E.D. Tex. 2008) ("Special circumstances can arise under various conditions, and the determination of when such conditions exist is left to the sound discretion of federal trial judges.").

"The term 'special circumstances' has never been precisely defined and courts have addressed on a case by case basis particularly sufficient circumstances that would reverse the strong presumption against bail." *Matter of Extradition of Maniero,* 950 F.Supp. 290, 294 (S.D. Cal. 1996). Accordingly, the list of "special circumstances" that might warrant bail "is not limited to those previously recognized in published decisions," and "the determination of what constitutes a 'special circumstance,' is left to the sound discretion of the trial judge." *In re Extradition of*

*Santos*, 473 F.Supp.2d 1030, 1036 (C.D. Cal. 2006) (quoting *In re Extradition of Gonzalez,* 52 F.Supp.2d 725, 736 (W.D. La. 1999)).[3]

Numerous magistrate and district court judges from across the county have released persons pending resolution of their extradition hearings on bond. *See, e.g., U.S. v. Wroclawski*, 574 F.Supp.2d 1040, 1044-45 (D. Ariz. 2008); *Matter of Extradition of Nacif-Borge*, 829 F.Supp. 1210, 1221-23 (D. Nev. 1993); *U.S. v. Taitz*, 130 F.R.D. 442, 445-47 (S.D. Cal. 1990). Indeed, some courts treat the provisional arrest stage more liberally in terms of granting bail than after the extradition hearing is concluded. *See, e.g., In re Extradition of Molnar*, 182 F.Supp.2d 684, 688-89 (N.D. Ill. 2002); *U.S. v. Messina*, 566 F.Supp. 740, 742 (E.D. N.Y. 1983).

Circuit courts have also weighed in when extradition cases have found their way onto their dockets through habeas proceedings after a final order of extradition. They have found such variety of factors such as raising "substantial claims upon which" the accused has "a high probability of success;" where there has been a "serious deterioration" of the accused's health while incarcerated; and where there has been unusual delay in the extradition process, *Salerno v. U.S.*, 878 F.2d 317, 317 (9th Cir. 1989), as well as the young age and lack of suitable detention facility of the accused. *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981).

Courts around the country disagree on whether the appropriate standard of review for the demonstration of special circumstances is, preponderance of the evidence or clear and convincing. *Compare In re Extradition of Garcia*, 761 F.Supp.2d 468, 483 (S.D. Tex. 2010) (clear and convincing) *with Garcia v. Benov*, No. CV 08-07719 MMM (CWx), 2009 WL 6498194, at *3

---

[3] It appears that there is not a lot of guidance in this arena of law because "magistrate judges' bail decisions in extradition proceedings are not" final decisions of the district courts of the United States within the meaning of 28 U.S.C. § 1291 and are hence not appealable orders. *United States v. Al-Nouri*, 983 F.3d 1096, 1098 (9th Cir. 2020).

(C.D. Cal., Apr. 13, 2009) (preponderance of the evidence). Regardless, under either standard, Spagni can demonstrate special circumstances more than sufficient to justify bond pending his extradition hearing.

**B. Special Circumstances Exist Here Sufficient to Warrant Spagni's Release on Bond.**

Here, there are at least three special circumstances that weigh in favor of Spagni's release on bond.

1. <u>COVID-19 and Spagni's Pre-Existing Medical Conditions.</u>

Spagni suffers from a combination of obesity and chronic severe asthma, which requires near-constant access to an asthma inhaler. Prior to his incarceration, Spagni would utilize the asthma inhaler several times per day, and it is of paramount necessity to have it close to him should he suffer an asthma attack. Without it during such an attack, Spagni would likely stop breathing. At present, Spagni is permitted access to his inhaler only twice per day at regularly scheduled intervals. There is no procedure in place for an emergency asthma attack. Should Spagni suffer an attack, he would have to rely on alerting a guard to the situation and then hope the guards could bring the medication to him, through two locked and secured prison doors, in time before he stopped breathing or suffered brain damage from lack of oxygen. Thus, given his serious pre-existing medical conditions, Spagni faces significant and life-threatening risks if he is forced to remain in custody for an extended period of time because of both the surging Delta variant of COVID-19 that infects even vaccinated people, like him, and the likelihood of an asthma attack (especially if he should contract a breakthrough infection of COVID-19). He should be released on bond.

As the Court is no doubt aware, many persons in federal detention have been released into home confinement pending their court hearings on the basis that the federal detention system has

been wholly unable to contain rampant COVID-19 transmission amongst the population. *See* Walter Pavlo, *Even After Vaccine, Federal Prisons Still Have COVID-19 Concerns*, Forbes, *available at* https://www.forbes.com/sites/walterpavlo/2021/05/31/even-after-vaccine-federal-prisons-still-have-covid-19-concerns/?sh=3f3ea53e2bea. Not only have there been issues with getting both staff and those detained in federal prisons access to the COVID-19 vaccine, *see id.* (noting that only roughly 50% of the Bureau of Prisons staff and prisoners have been vaccinated), the "fundamental population dynamics" of prisons render the vaccine ineffective. Benjamin A. Barsky, et al., *Vaccination plus Decarceration—Stopping Covid-19 in Jails and Prisons*, The New England Journal of Medicine (April 29, 2021), *available at* https://www.nejm.org/doi/full/10.1056/NEJMp2100609 (noting the constant movement "in and out of jails and prisons," a 55% turnover in the jail population each week, leads to rapidly multiplying Covid-19 cases amongst incarcerated persons and staff). Indeed, incarcerated people are "5.5 times as likely to be infected with SARS-CoV-2 as the general population and face three times the risk of death from Covid-19." *Id.*

The Delta variant's sweep through the American landscape presents a potentially life-threatening risk to Spagni, even though he is vaccinated. The Delta variant, which now represents approximately 83% of new infections in the United States is capable of infecting fully vaccinated people and can be dangerous to vulnerable people like him. *See* Julie Steenhuysen, et al., *How the Delta variant upends assumptions about the coronavirus*, Reuters (July 26, 2021), *available at* https://www.reuters.com/world/china/how-delta-variant-upends-assumptions-about-coronavirus-2021-07-26/. It is well-documented that fully vaccinated people have exhibited "breakthrough" infections of the delta variant of COVID-19, some of which are symptomatic, even after being fully vaccinated. *See, e.g., COVID-19 Vaccine Breakthrough Infections Reported to CDC –*

*United States, January 1 - April 30, 2021*, CDC Morbidity and Mortality Weekly Report, *available at* https://www.cdc.gov/mmwr/volumes/70/wr/mm7021e3.htm. These breakthrough infections have caused the CDC to reinstitute its policy that *all* individuals, including the vaccinated, should wear masks indoors. *See* Ciara Linnane, *CDC reverses policy on face masks, amid reports of breakthrough infections with delta variant of COVID-19*, MarketWatch (July 28, 2021), *available at* https://www.marketwatch.com/story/cdc-expected-to-reverse-policy-on-face-masks-later-tuesday-amid-reports-of-breakthrough-infections-with-delta-variant-of-covid-19-11627399505.

Every day Spagni is detained, he is in life-threatening danger. At present, Spagni is detained in a state-run facility in Kentucky, a state where only roughly 51% of the population has received even a single dose of the COVID-19 vaccine and which is seeing a surge in Delta variant COVID-19 infections. *See* David Morgan, *McConnell aims to boost U.S. Republican vaccination rate by countering 'bad advice,'* Reuters (July 28, 2021), *available at* https://www.reuters.com/world/us/mcconnell-strives-counter-bad-advice-boost-us-republican-vaccination-rate-2021-07-28/; Mayo Clinic, *U.S. COVID-19 vaccine tracker: See your state's progress*, *available at* https://www.mayoclinic.org/coronavirus-covid-19/vaccine-tracker. In fact, in Kentucky state prisons, thousands of staff and inmates have been infected with COVID-19 with multiple inmate deaths reported. *Covid-19 Response*, Commonwealth of Ky. Dep't of Corrections, *available at* https://corrections.ky.gov/Facilities/Pages/covid19.aspx (last updated July 23, 2021). Because of Spagni's very real concerns about COVID-19, he is permitted to stay in solitary confinement for 24 hours of the day in order to lower the risk of COVID-19 transmission to himself. This is no easy choice for Spagni, given that it means he is in constant isolation and has not even seen sunlight in over a week.

In *Taitz*, the district court held that the accused's allergic reactions to corn and corn sweeteners utilized in food products and detergent used in the laundry soap at the detention facility constituted special circumstances, among others, justifying bond. *Taitz*, 130 F.R.D. at 446. Spagni's preexisting medical conditions go well beyond the stomach upset and constant itching of *Taitz*. Moreover, because the combination of them and the presence of COVID-19 in prisons (particularly a prison over which the Bureau of Prisons has no real control) is life-threatening, even to the vaccinated under present circumstances, this case is significantly different than *Nezirovic v. Holt*, 990 F.Supp.2d 594, 601-02 (W.D. Va. 2013), in which the district court found that "serious" medical conditions did not rise to the level of special circumstances because they were not "life-threatening" nor "beyond the capacity of federal authorities to manage."

Here, COVID-19 is both beyond the capacity of federal authorities to manage at a facility that they do not oversee and operate, and a potentially life-threatening illness to Spagni. Beyond the threat to Spagni's life, he also lives with daily anxiety about the situation, so much so that he is willing to suffer 24 hours of isolation per day and lack of access to something as basic as sunlight to avoid contact with COVID-19. In comparison, detention in the home of a suitable third-party custodian, with an ankle bracelet, if necessary, absolutely secures Spagni's appearance while significantly lowering his health risks.[4]

### 2. There is a High Probability in Spagni Defeating Extradition.

The government is very likely to fail in its efforts to effectuate the extradition of Spagni. This provides additional independent grounds for his release. An extraditee's "high probability of success" is a special circumstance that may warrant release on bail. *Salerno*, 878 F.2d at 317-18;

---

[4] In advance of a hearing on this matter, counsel for Spagni will be filing information regarding a proposed third-party custodian.

*see Santos*, 473 F.Supp.2d at 1038-39. "In an extradition proceeding, the government bears the burden of establishing extraditability, including providing competent legal evidence" establishing that the "person named in the extradition request committed the charged offenses." *Santos*, 473 F.Supp.2d at 1038; *see Gonzalez*, 52 F.Supp.2d at 736. The probable cause requirement is not "toothless," and evidence submitted by the government must be both "sufficiently reliable and of sufficient weight to warrant the conclusion that probable cause exists." *Castaneda-Castillo*, 739 F.Supp.2d at 62 (citations omitted).

In this case, the government cannot provide competent legal evidence establishing that Spagni committed any of the crimes charged. These charges were initially sent to South African court on September 13, 2012, at which time the prosecution elected *not* to proceed with prosecution and *nolle prossed* the case after Spagni's counsel pointed out significant infirmities with the matter. Approximately five years later, on August 24, 2017, without any known intervening events, the South African authorities elected to recommence proceedings against Spagni.

Since that time, the South African prosecutors have been unable to proceed forward with the case on at least one occasion, on November 21, 2019. The authorities' difficulty in maintaining a prosecution against Spagni stems, in part, from the fact that critical bank records at issue in this case which might have established Spagni's ownership of the bank accounts to which the South African authorities allege Spagni directed payments, were lost in a fire that occurred in 2009. (**Ex. 6 – Absa Bank Affidavits**). In other words, South African authorities have no means to prove that Spagni was the recipient or beneficiary of the allegedly fraudulent proceeds. Beyond that, the case is severely dated and any witness testimony at this juncture, especially given the lack of corroborating paper records, is likely to be unreliable. "In its present posture, this case is shrouded

in so much uncertainty that any assessment of probability of success on the merits is simply not feasible," and Spagni should thus be granted bail. *Santos*, 473 F.Supp.2d at 1038.

### 3. There is a Lack of Any Diplomatic Necessity for Denying Bail.

The nature of the South African case and how it has been handled there to date strongly favor granting Spagni bail. Put simply, the South African authorities have "not made prosecution of this offense a priority." *Chapman*, 459 F.Supp.2d at 1027-28 (finding such was a special circumstance justifying bail). The prosecution against Spagni has stopped, started, and meandered for over a decade and the decision to issue a warrant for Spagni's arrest is vexing considering that the government has delayed the matter for a period of years because it was not prepared to proceed forward with trial as scheduled, but Spagni's failure to attend a court session in person during a pandemic when he was unvaccinated and located in a different part of the world was considered grounds for an arrest warrant (and extradition).[5] *See id.* at 1027 (stating that a dated prosecution may also justify special circumstances in that it would make it "difficult to track down witnesses and prepare evidence for the [extradition] hearing"). After all, less than a month prior to the arrest warrant being issued, South African authorities were asking for Spagni's help in an Interpol investigation. In response, Spagni willingly gave the South African authorities multiple ways to contact him, *none* of which the South African authorities used prior to issuing a warrant for his arrest. Further, Spagni was entirely open and conspicuous about his plans to emigrate to the United States, openly applying for a Visa through the United States consulate in South Africa, buying property in New York, and obtaining New York driver's licenses. *See Wroclawski*, 574 F.Supp.2d

---

[5] It is worth noting that Spagni's current South African counsel requested a meeting with South African prosecutors to discuss the case and the prosecution declined given the current pandemic conditions in South Africa.

at 1044-45 (finding extraditee bailable where there was a 20-year-old prosecution and the extraditee made no efforts to hide his whereabouts); *Castaneda-Castillo*, 739 F.Supp.2d at 58 ("If Peru wanted to locate him, he was easily found.").[6]

Additionally, the crime with which Spagni is charged, fraud, is bailable in both the United States and South Africa. *See Wroclawski*, 574 F.Supp.2d at 1044 (citing the availability of bail in both countries a special circumstance); *Castaneda-Castillo*, 739 F.Supp.2d at 59 (same). It makes little sense to hold Spagni without bail in solitary confinement or in general population and at significant risk of serious health complications from a COVID-19 in the United States when he would be eligible for bail in South Africa on the underlying offense. *See Taitz*, 130 F.R.D. at 446-447 (noting that both fraud and extradition proceedings are subject to bail in South Africa). This is especially true where, as here, if the South African government takes as long to provide its evidence for Spagni's extradition hearing as it has for the underlying offense, Spagni would be incarcerated for years. That is a special circumstance that alone warrants bail. *See id.* at 446 (finding that a two-year period of incarceration to fully finish extradition proceedings was a special circumstance warranting bail).

### C. Spagni Does Not Pose a Risk of Flight and is Not a Danger to the Community.

Spagni is not a flight risk or a danger to the community. The government's arguments to the contrary are without merit. In addition to establishing special circumstances sufficient to warrant bail, the accused in an extradition proceeding must also establish that he is neither a risk of flight nor a danger to the community, though courts are split as to whether such factors are part and parcel of the "special circumstances" analysis or separate issues for the court to consider. *See,*

---

[6] Spagni's notification of the hearing came through counsel, not through the South African authorities.

*e.g., Castaneda-Castillo*, 739 F.Supp.2d at 55-56; *Garcia*, 761 F.Supp.2d at 472-73 (S.D. Tex. 2010); *Santos*, 473 F.Supp.2d at 1035-36. Regardless of whether the Court considers these factors as part of its special circumstances analysis or separately, they weigh in favor of bail.

The government's accusations about Spagni's risk of flight are conclusory and unsupported by reference to any specific facts. The government claims, without proof, that "Spagni has a history of failing to appear and evading justice" based solely on Spagni's physical absence from court on April 19, 2021. (Doc. 3, Page ID # 21). Yet, the government's brief omits that Spagni has been aware of this criminal prosecution since at least 2011, when he first self-surrendered to the Maitland Police Station and he has consistently shown up, whenever and wherever asked by the South African authorities over a period of many frustrating years, including sitting through trial for a number of days. Quite frankly, it is the South African government who has failed to show up ready to proceed with Spagni's case numerous times, pushing a decades-old matter into a worldwide pandemic that made it extremely unsafe to continue in person. Regardless of the government's behavior, Spagni was still willing to assist the South African authorities in resolving an Interpol matter in March 2021, a month before the arrest warrant issued, and when Spagni was in the process of emigrating to the United States. Indeed, Spagni told South African authorities how to get a hold of him during this time period, information that they did not utilize before issuing the warrant for Spagni's arrest.

In the scheme of things, Spagni's refusal to subject himself to the very real threat of contracting COVID-19, which carries a potential risk of death to Spagni given his complicating conditions, by traveling to and attending court proceedings, unvaccinated, during a global pandemic in a country where the transmission rates have remained exceptionally high (and which would have required extensive travel through multiple airports with an unknown quantity of

{02270827.1 }16
Case 3:21-mj-04149  Document 6  Filed 07/30/21  Page 16 of 20 PageID #: 49

people), makes sense. Indeed, the United States Centers for Disease Control ("CDC") ranks COVID-19 levels in South Africa at "Level 4: Very High," the highest level given, and recommends avoiding travel to South Africa. *Travelers' Health: COVID-19 in South Africa*, CDC, *available at* https://wwwnc.cdc.gov/travel/notices/covid-4/coronavirus-south-africa.

Spagni, through counsel, had repeatedly alerted the South African prosecutor's office that he was a high COVID-19 risk and felt deathly uncomfortable traveling to and attending court in person. He gave South African law enforcement multiple avenues of contact to reach him, including private telephone and email information, and he had counsel representing him at every stage of his South African proceedings. Thus, Spagni's failure to show up at a single hearing, when he had shown up at multiple hearings over the course of many years does not support detention pending extradition hearings.

Moreover, the government is simply wrong that Spagni has an "incentive to flee." (*See* Doc. 3, Page ID # 22). Having worked hard to obtain an O-1 Visa to the United States, failing to appear at a federal court hearing would be a death knell to Spagni's hopes of relocating to the United States permanently. *See Taitz*, 130 F.R.D. at 445 (finding that accused's immigration status supported bail during extradition proceedings because "[f]ailure to appear would affect his immigration status"). Spagni has every incentive, in fact, to face this issue head on and resolve it in a way that permits him to live in the United States and continue working with his business partners, who are also located in the United States, and some of whom live in the Middle District of Tennessee.

The government also states that Spagni is facing "up to twenty years imprisonment" in South Africa (Doc. 3, Page ID # 23), but the South African charging document states that the crimes carry only up to a 60-month (5 year) term of imprisonment, (**Ex. 1**), Spagni has always

been released on his own recognizance pending trial, and the state prosecutor has taken over a decade to bring the case to prosecution, including dismissing the pending charges at one point due to the government's unwillingness or inability to prosecute. Spagni loses far more by fleeing in this matter than he gains by avoiding criminal prosecution in South Africa; there is thus no risk of flight.

Spagni also poses *zero* risk of danger to the community, as implicitly recognized by the government, who completely failed to provide any argument or analysis on this point other than pointing out that Spagni has "significant cryptocurrency assets" and "a watch valued at $800,000." (*See* Doc. 3, Page ID # 23). Working in cryptocurrency and blockchain is not a crime, nor is owning cryptocurrency or having a particular interest in expensive watches.[7]

Spagni was granted an O-1 Visa by the United States because of his extraordinary ability and achievement in the area of cryptocurrency and blockchain, an industry that is growing in reputation and prominence in the United States. Likewise, his business partners in the United States are well-respected and prominent individuals. The government puts forth no evidence, whatsoever, that any of Spagni's work in cryptocurrency or blockchain poses any amount of danger to the community or has harmed the community in any way. In fact, the government's own provisional grant of an O-1 Visa to Spagni, signifies just the opposite.

Moreover, the crimes with which Spagni is charged in South Africa are over ten years old and are indisputably unrelated to cryptocurrency and blockchain. And far from presenting a risk

---

[7] On the other hand, Spagni's continued detention poses very real threats to his safety. Individuals who are successful in the area of cryptocurrency and blockchain often go to great lengths to protect their private information because, otherwise, they are routinely subjected to harassment and online attacks, including hacking attempts, SIM swapping, and swatting. Further, Spagni faces the risk that other individuals incarcerated with him will get a sense of his access to capital and extort him, including by means of physical violence. This is yet another reason why Spagni chooses 24 hours of solitary confinement per day.

to the community, the South African government actually sought Spagni's expertise in furtherance of an Interpol investigation regarding such matters in March 2021, an invitation that Spagni heartily accepted. Spagni poses zero risk to the community should he be released on bail pending his extradition hearing.

**IV.     Conclusion**

Spagni respectfully requests that he be released from custody and be permitted to stay at the home of a suitable third-party custodian pending his extradition hearing. Should the Court elect to impose restrictions, Spagni agrees to accept reasonable conditions imposed by the Court in lieu of continued custody, including wearing an ankle monitor to ensure his continued presence in this district.

**Respectfully submitted,**

 */s/ Henry C. Leventis*
Henry C. Leventis (BPR 038306)
Jonathan P. Farmer (BPR 020749) 511
Union St, Suite 1000
Nashville, TN 37219
(P) 615-238-6300
hleventis@bonelaw.com
jfarmer@bonelaw.com

 */s/ Brian E. Klein*
Brian E. Klein*
Melissa A. Meister*
WAYMAKER LLP
777 S. Figueroa Street, Suite 2850
Los Angeles, CA 90017
(P) 424-652-7800
bklein@waymakerlaw.com
mmeister@waymakerlaw.com
*(\*Pro Hac Vice Applications Forthcoming)*

*Counsel for Riccardo Spagni*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 23, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a Notice of Electronic Filing to all attorneys of record.

                                           ***/s/ Henry C. Leventis***
                                           Henry C. Leventis