# EXHIBIT 1

*Spagni Charge Sheet*

## IN THE REGIONAL DIVISION OF THE CAPE
## HELD AT CAPE TOWN

**CASE NUMBER F93/2017**

In the matter between:

**THE STATE**

Versus

**RICARDO SPAGNI**
**(Hereinafter referred to as "the accused")**

---

## CHARGE SHEET

---

**PREAMBLE:**

**WHEREAS**

1.  **THE ACCUSED**

    1.1. Is a 36 year old, South African citizen, with identification number ▮▮▮▮▮▮▮ residing at ▮▮▮▮▮▮▮▮▮▮▮, Cape Town;

    1.2. Was employed by Cape Cookies CC ("Cape Cookies") for the period 1 October 2009 to 8 June 2011 as Information Technology Manager (IT Manager);

    1.3. Held a bank account with ABSA bank with account number 9172366442 into which Cape Cookies paid his monthly salary;

    1.4. Held four further savings accounts with ABSA bank with the following account numbers 9251587260, 9234432919, 9242913591 and 9243264866;

    1.5. Cape Cookies principal place of business is situated at 16 Chapel Street Maitland, in the Regional Division of the Cape;

    1.6. Cape Cookie's postal address is PO Box 810 Maitland 7404;

1.7. The postal address of PO Box 2939 Somerset West 7130 is unknown to the management of Cape Cookies;

1.8. As IT Manager the accused was required to comply with the financial policy of the company that included signing off on invoices for goods and services supplied to his department and authorising payment of these invoices for his department up to R2000;

1.9. In circumstances where invoices exceeded R2000 the invoices were presented to the Chief Financial Officer (Leslie Slye) for authorisation whereafter these invoices would be loaded for payment by the assistant accountant (Claudette Farmer) onto the FNB bank's Electronic Fund Transfer payment system;

1.10. All invoices were paid from the Cape Cookies FNB bank account with account number 62017026966;

2. <u>EOH Mthombo (Pty) Ltd trading as Ensync Network Solutions (Pty) Ltd</u>

2.1. Ensync Network Solutions (Pty) Ltd (Ensync) provided information technology services and goods to Cape Cookies;

2.2. Ensync underwent a change of ownership during November 2010 and formally started trading as EOH Mthombo (Pty) Ltd from March 2011;

2.3. EOH Mthombo (Pty)Ltd t/a Ensync is registered for VAT with SARS with VAT number 4320172499;

2.4. Ensync's invoices were paid by Cape Cookies into <u>ABSA account number 9251587260 held by the accused Mr RP Spagni;</u>

2.5. Ensync has a bank account with Nedbank with account number 1469092360 and does not have a bank account with ABSA;

3. <u>DarkCube Biometrics CC</u>

   3.1. DarkCube Biometrics CC was associated with a deregistered entity called Dust Technologies CC and Cape Cookies never had any business dealings with either of the entities;

   3.2. The contact details and VAT registration number of DarkCube reflected on the invoices presented to Cape Cookies are invalid;

   3.3. DarkCube Biometrics CC could not be traced and Cape Cookies did not receive any invoices or enquiry pertaining to outstanding monies from the entity since the accused left the employment of Cape Cookies;

   3.4. DarkCube's invoices were paid by Cape Cookies into <u>ABSA account with account number 9234432919 held by the accused Mr RP Spagni;</u>

4. <u>Jurun Trading CC t/a SolidSource</u>

   4.1. Jurun Trading CC t/a SolidSource is not registered with CIPRO under the registration number CK2000/081731/23;

   4.2. The VAT number 4328441084 reflected on the invoices issued to Cape Cookies is not recognised as a valid VAT number by SARS;

   4.3. Jurun Trading CC t/a SolidSource could not be traced and Cape Cookies did not receive any invoices or enquiry pertaining to outstanding monies from the entity since the accused left the employment of Cape Cookies;

   4.4. SolidSource's invoices were paid by Cape Cookies into <u>ABSA account with account number 9242913591 held by the accused Mr RP Spagni;</u>

5. <u>StorVault Africa</u>

   5.1. The VAT number 4377981235 quoted on the invoices issued to Cape Cookies by StorVault Africa is not recognised as a valid VAT number by SARS;

   5.2. StorVault Africa could not be traced and Cape Cookies did not receive any invoices or enquiry pertaining to outstanding monies from the entity since the accused left the employment of Cape Cookies;

   5.3. Cape Cookies paid the StorVault Africa invoices into an <u>ABSA account with account number 9243264866 held by the accused Mr RP Spagni.</u>

**NOW THEREFORE** the accused is guilty of the following offences:

<u>**COUNTS 1 to 17**</u>
**FRAUD**
**(Ensync Network Solutions (PTY)Ltd – Schedule 1)**
**IN THAT** on or about the dates as mentioned in Column A of Schedule 1, and at or near the business premises of Cape Cookies CC situated at 16 Chapel Street Maitland, in the Regional Division of the Western Cape, the accused unlawfully, falsely and with the intent to defraud, gave out and pretended to Cape Cookies and/or the Chief Financial Officer of Cape Cookies, Leslie Slye and/or other representatives of Cape Cookies, that:

1. The invoices mentioned in Column B of Schedule 1 have been issued by Ensync Network Solutions (Pty) Ltd for actual services rendered and/or goods delivered by Ensync Network Solutions (Pty) Ltd to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 1 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by Ensync Network Solutions (Pty) Ltd and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to Ensync Network Solutions (Pty) Ltd in the amounts as per Column D of Schedule 1 and/or

4. Payment should be made from the business bank account of Cape Cookies to Ensync Network Solutions (Pty) Ltd bank account as per Column F of Schedule 1 and/or

5. Ensync Network Solutions (Pty) Ltd is registered for VAT with SARS with VAT registration number 4470205206 as stipulated on the invoices per Column B of Schedule 1 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 1 is payable to Ensync Network Solutions (Pty) Ltd and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies and/or

**AND** did there and then, by means of the said misrepresentation, induce the representatives from Cape Cookies CC to accept that:

1. The invoices mentioned in Column B of Schedule 1 have been issued by Ensync Network Solutions (Pty) Ltd for actual services rendered and/or goods delivered by Ensync Network Solutions (Pty) Ltd to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 1 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by Ensync Network Solutions (Pty) Ltd and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to Ensync Network Solutions (Pty) Ltd in the amounts as per Column D of Schedule 1 and/or

4. Payment should be made from the business bank account of Cape Cookies to Ensync Network Solutions (Pty) Ltd bank account as per Column F of Schedule 1 and/or

5. Ensync Network Solutions (Pty) Ltd is registered for VAT with SARS with VAT registration number 4470205206 as stipulated on the invoices per Column B of Schedule 1 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 1 is payable to Ensync Network Solutions (Pty) Ltd and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies and/or

**WHEREAS** in truth and in fact, the accused when he misrepresented as aforesaid, well knew:-

1. The invoices mentioned in Column B of Schedule 1 were not issued by Ensync Network Solutions (Pty) Ltd and/or

2. The invoices were not authorised or ought not to be authorised for full and final settlement for the amounts set out in Column D of Schedule 1 as the services and/or goods were not in actual fact rendered to the IT department of Cape Cookies for the benefit of Cape Cookies by Ensync Network Solutions (Pty) Ltd and/or

3. The accused abused his power and authorised and/or presented for authorisation the said invoices that would result in payment inclusive of VAT to Ensync Network Solutions (Pty) Ltd in the amounts as per Column D of Schedule 1 and/or

4. Payment should not have been made from the business bank account of Cape Cookies to Ensync Network Solutions (Pty) Ltd with bank account as per Column F of Schedule 1 and/or

5. Ensync Network Solutions (Pty) Ltd was registered for VAT with SARS with VAT registration number 4320172499 and not VAT registration number 4470205206 as stipulated on the invoices per Column B of Schedule 1, which were not valid invoices and/or

6. The VAT portion of the said invoices as per Column E of Schedule 1 was not payable to Ensync Network Solutions (Pty) Ltd and ought not to be use as input VAT for purposes of calculating the VAT liability of Cape Cookies.

**And** that Accused thus committed Fraud.

## ALTERNATIVE TO COUNTS 1 TO 17

**THAT** the accused is guilty of a contravention of Section 59(1)(h) read with Sections 2, 13, 16, 46 and 48 of the Value Added Tax Act, Act 89 of 1991.

**IN** that on or about the dates mentioned in Column A of Schedule 1 and at or near Maitland in the Regional Division of the Cape, the accused wrongfully and with the intent to assist Cape Cookies CC to obtain a refund of tax under the VAT Act to which Cape Cookies CC was not entitled in the amount as set out in Column E of Schedule 1, knowingly issued forged tax invoices as per Column B of Schedule 1 reflecting a VAT amount and an invalid VAT registration number.

[Penalty Clause: A fine or a term of imprisonment not exceeding than 60 months imprisonment]

## COUNTS 18 TO 34

**FORGERY**

**IN THAT** on or about the dates mentioned in Column A of Schedule 1 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC forge instruments in writing, to wit, invoices as per Column B of Schedule

1 creating a false document, which purported to be an invoice as per Column B of Schedule 1 for services and/or goods by Ensync Network Solutions (Pty) Ltd.

**WHILST** the accused knew that in actual fact Ensync Network Solutions (Pty) Ltd did not issue the invoices as per Column B of Schedule 1 and/or that the said invoices did not reflect actual transactions and/or supplies rendered to Cape Cookies CC by Ensync Network Solutions (Pty) Ltd.

### COUNTS 35 to 51

### UTTERING

**IN THAT** on or about the dates mentioned in Column A of Schedule 1 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC utter false documents to Cape Cookies CC and/or the representatives of Cape Cookies CC, to wit:- forge instruments in writing, to wit, invoices as per Column B of Schedule 1 whilst the accused knew that the invoices were forged documents that were not issued by Ensycn Network Solutions (Pty) Ltd.

### COUNTS 52 TO 121
### FRAUD
### (DarkCube Biometrics CC – Schedule 2)

**IN THAT** on or about the dates as mentioned in Column A of Schedule 2, and at or near the business premises of Cape Cookies CC situated at 16 Chapel Street Maitland, in the Regional Division of the Western Cape, the accused unlawfully, falsely and with the intent to defraud, gave out and pretended to Cape Cookies and/or the Chief Financial Officer of Cape Cookies, Leslie Slye and/or other representatives of Cape Cookies, that:

1. The invoices mentioned in Column B of Schedule 2 have been issued by DarkCube Biometrics CC for actual services rendered and/or goods delivered by DarkCube Biometrics CC to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 2 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by DarkCube Biometrics CC and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to DarkCube Biometrics CC in the amounts as per Column D of Schedule 2 and/or

4. Payment should be made from the business bank account of Cape Cookies to DarkCube Biometrics CC's bank account as per Column F of Schedule 2 and/or

5. DarkCube Biometrics CC is registered for VAT with SARS with VAT registration number 4690226792 as stipulated on the invoices per Column B of Schedule 2, being valid tax invoices and/or

6. The VAT portion of the said invoice as per Column E of Schedule 2 is payable to DarkCube Biometrics CC and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies and/or

**AND** did there and then, by means of the said misrepresentation, induce the representatives from Cape Cookies CC to accept that:

1. The invoices mentioned in Column B of Schedule 2 have been issued by DarkCube Biometrics CC for actual services rendered and/or goods delivered by DarkCube Biometrics CC to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 2 in relation to the

services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by DarkCube Biometrics CC and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to DarkCube Biometrics CC in the amounts as per Column D of Schedule 2 and/or

4. Payment should be made from the business bank account of Cape Cookies to DarkCube Biometrics CC bank account as per Column F of Schedule 2 and/or

5. DarkCube Biometrics CC is registered for VAT with SARS with VAT registration number 4690226792 as stipulated on the invoices per Column B of Schedule 2 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 2 is payable to DarkCube Biometrics CC and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies and/or

**WHEREAS** in truth and in fact, the accused when he misrepresented as aforesaid, well knew:-

1. The invoices mentioned in Column B of Schedule 2 were not issued by DarkCube Biometrics CC and no services were rendered and no goods delivered by DarkCube Biometrics CC to Cape Cookies and/or

2. The invoices were not authorised or ought not to be authorised for full and final settlement for the amounts set out in Column D of Schedule 2 as the services and/or goods were not in actual fact rendered to the IT department of Cape Cookies for the benefit of Cape Cookies by DarkCube Biometrics CC and/or

3. The accused abused his power and authorised and/or presented for authorisation the said invoices that would result in payment inclusive of VAT to DarkCube Biometrics CC in the amounts as per Column D of Schedule 2 and/or

4. Payment should not have been made from the business bank account of Cape Cookies to DarkCube Biometrics CC with bank account as per Column F of Schedule 2 and/or

5. DarkCube Biometrics CC was not registered for VAT with SARS and did not have the VAT registration number 4690226792 as stipulated on the invoices per Column B of Schedule 2, which were not valid invoices and/or

6. The VAT portion of the said invoices as per Column E of Schedule 2 was not payable to DarkCube Biometrics CC and ought not to be used as input VAT for purposes of calculating the VAT liability of Cape Cookies and/or

**And** that Accused thus committed Fraud.

## **ALTERNATIVE TO COUNTS 52 TO 121**

**THAT** the accused is guilty of a contravention of Section 59(1)(h) read with Sections 2, 13, 16, 46 and 48 of the Value Added Tax Act, Act 89 of 1991.

**IN** that on or about the dates mentioned in Column A of Schedule 2 and at or near Maitland in the Regional Division of the Cape, the accused wrongfully and with the intent to assist Cape Cookies CC to obtain a refund of tax under the VAT Act to which Cape Cookies CC was not entitled in the amount as set out in Column E of Schedule 2, knowingly issued forged tax invoices as per Column B of Schedule 2 reflecting a VAT amount and an invalid VAT registration number.

[Penalty Clause: A fine or a term of imprisonment not exceeding than 60 months imprisonment]

**COUNTS 122 TO 191**

**FORGERY**

**IN THAT** on or about the dates mentioned in Column A of Schedule 2 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC forge instruments in writing, to wit, invoices as per Column B of Schedule 2 for services and/or goods by DarkCube Biometrics CC.

**WHILST** the accused knew that the said invoices did not reflect actual transactions and/or supplies rendered to Cape Cookies CC by DarkCube Biometrics CC.

**COUNTS 192 TO 261**

**UTTERING**

**IN THAT** on or about the dates mentioned in Column A of Schedule 2 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC utter false documents to Cape Cookies CC and/or the representatives of Cape Cookies CC, to wit:- invoices as per Column B of Schedule 2 whilst the accused knew that the invoices were forged documents that were not issued by DarkCube Biometrics CC.

**COUNTS 262 TO 283**
**FRAUD**
**(Jurun Trading CC trading as SolidSource – Schedule 3)**

**IN THAT** on or about the dates as mentioned in Column A of Schedule 3, and at or near the business premises of Cape Cookies CC situated at 16 Chapel Street Maitland, in the Regional Division of the Western Cape, the accused unlawfully, falsely and with the intent to defraud, gave out and pretended to Cape Cookies and/or the

Chief Financial Officer of Cape Cookies, Leslie Slye and/or other representatives of Cape Cookies, that:

1. The invoices mentioned in Column B of Schedule 3 have been issued by SolidSource for actual services rendered and/or goods delivered by SolidSource to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 3 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by SolidSource and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to SolidSource in the amounts as per Column D of Schedule 3 and/or

4. Payment should be made from the business bank account of Cape Cookies to SolidSource bank account as per Column F of Schedule 3 and/or

5. SolidSource is registered for VAT with SARS with VAT registration number 4328441084 as stipulated on the invoices per Column B of Schedule 3 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 3 is payable to SolidSource and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies,

**AND** did there and then, by means of the said misrepresentation, induce the representatives from Cape Cookies CC to accept that:

1. The invoices mentioned in Column B of Schedule 3 have been issued by SolidSource for actual services rendered and/or goods delivered by SolidSource to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 3 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by SolidSource and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to SolidSource in the amounts as per Column D of Schedule 3 and/or

4. Payment should be made from the business bank account of Cape Cookies to SolidSource bank account as per Column F of Schedule 3 and/or

5. SolidSource is registered for VAT with SARS with VAT registration number 4328441084 as stipulated on the invoices per Column B of Schedule 3 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 3 is payable to SolidSource and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies and/or

**WHEREAS** in truth and in fact, the accused when he misrepresented as aforesaid, well knew:-

1. The invoices mentioned in Column B of Schedule 3 were not issued by SolidSource and no services were rendered and no goods were delivered by SolidSource and/or

2. The invoices were not authorised or ought not to be authorised for full and final settlement for the amounts set out in Column D of Schedule 3 as the services and/or goods were not in actual fact rendered to the IT department of Cape Cookies for the benefit of Cape Cookies by Ensync Network Solutions (Pty) Ltd and/or

3. The accused abused his power and authorised and/or presented for authorisation the said invoices that would result in payment inclusive of VAT to SolidSource in amounts as per Column D of Schedule 3 and/or

4. Payment should not have been made from the business bank account of Cape Cookies to SolidSource with bank account as per Column F of Schedule 3 and/or

5. SolidSource was registered for VAT with SARS with VAT registration number 4320172499 and not VAT registration number 4470205206 as stipulated on the invoices per Column B of Schedule 3, which were not valid invoices and/or

6. The VAT portion of the said invoices as per Column E of Schedule 3 was not payable to SolidSource and ought not to be used as input VAT for purposes of calculating the VAT liability of Cape Cookies.

**And** that Accused thus committed Fraud.


## ALTERNATIVE TO COUNTS 262 TO 283

**THAT** the accused is guilty of a contravention of Section 59(1)(h) read with Sections 2, 13, 16, 46 and 48 of the Value Added Tax Act, Act 89 of 1991.

**IN** that on or about the dates mentioned in Column A of Schedule 3 and at or near Maitland in the Regional Division of the Cape, the accused wrongfully and with the intent to assist Cape Cookies CC to obtain a refund of tax under the VAT Act to which Cape Cookies CC was not entitled in the amount as set out in Column E of Schedule 3, knowingly issued forged tax invoices as per Column B of Schedule 3 reflecting a VAT amount and an invalid VAT registration number.

[Penalty Clause: A fine or a term of imprisonment not exceeding than 60 months imprisonment]

## COUNTS 284 TO 305

**FORGERY**

**IN THAT** on or about the dates mentioned in Column A of Schedule 3 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC forge instruments in writing, to wit, invoices as per Column B of Schedule 3 for services and/or goods supplied by SolidSource to Cape Cookies.

**WHILST** the accused knew that in actual fact SolidSource did not issue the invoices as per Column B of Schedule 3 and/or that the said invoices did not reflect actual transactions and/or supplies rendered to Cape Cookies CC by SolidSource.

## COUNTS 306 TO 327

**UTTERING**

**IN THAT** on or about the dates mentioned in Column A of Schedule 3 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC utter false documents to Cape Cookies CC and/or the representatives of Cape Cookies CC, to wit:- invoices as per Column B of Schedule 3 whilst the accused knew that the invoices were forged documents that were not issued by SolidSource.

## COUNTS 328 TO 344
**FRAUD**
**(Storvault Africa– Schedule 4)**

**IN THAT** on or about the dates as mentioned in Column A of Schedule 4, and at or near the business premises of Cape Cookies CC situated at 16 Chapel Street Maitland, in the Regional Division of the Western Cape, the accused unlawfully, falsely and with the intent to defraud, gave out and pretended to Cape Cookies and/or the

Chief Financial Officer of Cape Cookies, Leslie Slye and/or other representatives of Cape Cookies, that:

1. The invoices mentioned in Column B of Schedule 4 have been issued by StorVault Africa for actual services rendered and/or goods delivered by StorVault Africa to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 4 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by StorVault Africa and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to StorVault Africa in the amounts as per Column D of Schedule 4 and/or

4. Payment should be made from the business bank account of Cape Cookies to StorVault Africa bank account as per Column F of Schedule 4 and/or

5. StorVault Africa is registered for VAT with SARS with VAT registration number 4377981235 as stipulated on the invoices per Column B of Schedule 4 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 4 is payable to StorVault Africa and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies,

**AND** did there and then, by means of the said misrepresentation, induce the representatives from Cape Cookies CC to accept that:

1. The invoices mentioned in Column B of Schedule 4 have been issued by StorVault Africa for actual services rendered and/or goods delivered by StorVault Africa to Cape Cookies and/or

2. The invoices were authorised or ought to be authorised for full and final settlement for the amounts set out in Column D of Schedule 4 in relation to the services and/or goods that were in actual fact rendered to the IT department of Cape Cookies by StorVault Africa and/or

3. The accused was authorised and/or entitled to present for authorisation the said invoices that would result in payment inclusive of VAT by Cape Cookies to StorVault Africa in the amounts as per Column D of Schedule 4 and/or

4. Payment should be made from the business bank account of Cape Cookies to StorVault Africa bank account as per Column F of Schedule 4 and/or

5. StorVault Africa is registered for VAT with SARS with VAT registration number 4377981235 as stipulated on the invoices per Column B of Schedule 4 being valid tax invoices, and/or

6. The VAT portion of the said invoice as per Column E of Schedule 4 is payable to StorVault Africa and would qualify as input VAT for purposes of calculating the VAT liability of Cape Cookies.

**WHEREAS** in truth and in fact, the accused when he misrepresented as aforesaid, well knew:-

1. The invoices mentioned in Column B of Schedule 4 were not issued by StorVault Africa and no services were rendered and no goods were delivered by StorVault to Cape Cookies and/or

2. The invoices were not authorised or ought not to be authorised for full and final settlement for the amounts set out in Column D of Schedule 4 as the services and/or goods were not in actual fact rendered to the IT department of Cape Cookies for the benefit of Cape Cookies by StorVault Africa and/or

3. The accused abused his power and authorised and/or presented for authorisation the said invoices that would result in payment inclusive of VAT to StorVault Africa in amounts as per Column D of Schedule 4 and/or

4. Payment should not have been made from the business bank account of Cape Cookies to StorVault Africa with bank account as per Column F of Schedule 4 and/or

5. StorVault Africa was not registered for VAT with VAT registration number 4377981235 as stipulated on the invoices per Column B of Schedule 4, which were not valid invoices and/or

6. The VAT portion of the said invoices as per Column E of Schedule 4 was not payable to StorVault Africa and ought not to be use as input VAT for purposes of calculating the VAT liability of Cape Cookies.

**And** that Accused thus committed Fraud.

## ALTERNATIVE TO COUNTS 328 TO 344

**THAT** the accused is guilty of a contravention of Section 59(1)(h) read with Sections 2, 13, 16, 46 and 48 of the Value Added Tax Act, Act 89 of 1991.

**IN** that on or about the dates mentioned in Column A of Schedule 4 and at or near Maitland in the Regional Division of the Cape, the accused wrongfully and with the intent to assist Cape Cookies CC to obtain a refund of tax under the VAT Act to which Cape Cookies CC was not entitled in the amount as set out in Column E of Schedule 4, knowingly issued forged tax invoices as per Column B of Schedule 4 reflecting a VAT amount and an invalid VAT registration number.

[Penalty Clause: A fine or a term of imprisonment not exceeding than 60 months imprisonment]

## COUNTS 345 TO 361

**FORGERY**

**IN THAT** on or about the dates mentioned in Column A of Schedule 4 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC forge instruments in writing, to wit, invoices as per Column B of Schedule 4 for services and/or goods by StorVault Africa.

**WHILST** the accused knew that in actual fact StorVault Africa did not issue the invoices as per Column B of Schedule 4 and/or that the said invoices did not reflect actual transactions and/or supplies rendered to Cape Cookies CC by StorVault Africa.

## COUNTS 362 TO 378

**UTTERING**

**IN THAT** on or about the dates mentioned in Column A of Schedule 4 and at or near Maitland, in the Regional Division of the Cape, the accused did unlawfully, falsely and with intent thereby to defraud, and to the prejudice or potential prejudice of Cape Cookies CC utter false documents to Cape Cookies CC and/or the representatives of Cape Cookies CC, to wit:- invoices as per Column B of Schedule 4 whilst the accused knew that the invoices were forged documents that were not issued by StorVault Africa.

## SCHEDULE 1

| COUNT | COLUMN A<br>Date | COLUMN B<br>Invoice description | COLUMN C<br>Service Provider | COLUMN D<br>Total amount of invoice | COLUMN E<br>VAT portion indicated on invoice | COLUMN F<br>Bank account details of service provider stipulated on invoice |
|---|---|---|---|---|---|---|
| 1, 18 and 35 | Tuesday, 04 May 2010 | Quote no. QO2614 | Ensync Network Solutions (Pty) Ltd | 34 792,80 | 4 272,80 | ABSA Bank 9251587260 |
| 2, 19 and 36 | Tuesday, 04 May 2010 | Quote no. QO2615 | Ensync Network Solutions (Pty) Ltd | 25 080,00 | 3 080,00 | ABSA Bank 9251587260 |
| 3, 20 and 37 | Tuesday, 19 October 2010 | Quote no. QO2619 | Ensync Network Solutions (Pty) Ltd | 22 144,50 | 2 719,50 | ABSA Bank 9251587260 |
| 4, 21 and 38 | Tuesday, 19 October 2010 | Quote no. QO2623 | Ensync Network Solutions (Pty) Ltd | 6 600,60 | 810,60 | ABSA Bank 9251587260 |
| 5, 22 and 39 | Monday, 25 October 2010 | Quote no. QO2620 | Ensync Network Solutions (Pty) Ltd | 41 485,06 | 5 094,66 | ABSA Bank 9251587260 |
| 6, 23 and 40 | Monday, 29 November 2010 | Quote no. QO2620 | Ensync Network Solutions (Pty) Ltd | 43 673,86 | 5 363,46 | ABSA Bank 9251587260 |
| 7, 24 and 41 | Tuesday, 07 December 2010 | Quote no. QO2697 | Ensync Network Solutions (Pty) Ltd | 2 029,20 | 249,20 | ABSA Bank 9251587260 |
| 8, 25 and 42 | Tuesday, 07 December 2010 | Quote no. QO2697 | Ensync Network Solutions (Pty) Ltd | 1 960,80 | 240,80 | ABSA Bank 9251587260 |
| 9, 26 and 43 | Monday, 20 December 2010 | Invoice no. QO2711 | Ensync Network Solutions (Pty) Ltd | 43 673,86 | 5 363,46 | ABSA Bank 9251587260 |
| 10, 27 and 44 | Tuesday, 25 January 2011 | Invoice no. QO2716 | Ensync Network Solutions (Pty) Ltd | 43 673,86 | 5 363,46 | ABSA Bank 9251587260 |
| 11, 28 and 45 | Friday, 04 February 2011 | Quote no. QO2731 | Ensync Network Solutions (Pty) Ltd | 1 812,60 | 222,60 | ABSA Bank 9251587260 |
| 12, 29 and 46 | Monday, 28 February 2011 | Invoice no. QO2739 | Ensync Network Solutions (Pty) Ltd | 46 401,88 | 5 698,48 | ABSA Bank 9251587260 |
| 13, 30 and 47 | Wednesday, 02 March 2011 | Quote no. QO2743 | Ensync Network Solutions (Pty) Ltd | 2 091,90 | 256,90 | ABSA Bank 9251587260 |
| 14, 31 and 48 | Friday, 25 March 2011 | Invoice no. QO2747 | Ensync Network Solutions (Pty) Ltd | 46 401,88 | 5 698,48 | ABSA Bank 9251587260 |
| 15, 32 and 49 | Tuesday, 05 April 2011 | Quote no. QO2761 | Ensync Network Solutions (Pty) Ltd | 2 175,12 | 267,12 | ABSA Bank 9251587260 |
| 16, 33 and 50 | Thursday, 28 April 2011 | Invoice no. QO2759 | Ensync Network Solutions (Pty) Ltd | 46 401,88 | 5 698,48 | ABSA Bank 9251587260 |
| 17, 34 and 51 | Tuesday, 31 May 2011 | Invoice no. QO2762 | Ensync Network Solutions (Pty) Ltd | 46 401,88 | 5 698,48 | ABSA Bank 9251587260 |

| SCHEDULE 2 | | | | | |
|---|---|---|---|---|---|
| COUNT | COLUMN A | COLUMN B | COLUMN C | COLUMN D | COLUMN E | COLUMN F |
| | Date | Invoice description | Service Provider | Total amount of invoice | VAT portion indicated on invoice | Bank account details of service provider stipulated on invoice |
| 52, 122 and 192 | Monday, 30 November 2009 | DCI092880231 | DarkCube Biometrics | 1 254,00 | 154,00 | ABSA bank 9234432919 |
| 53, 123 and 193 | Tuesday, 01 December 2009 | DCI092380236 | DarkCube Biometrics | 1 231,20 | 151,20 | ABSA bank 9234432919 |
| 54, 124 and 194 | Thursday, 03 December 2009 | DCI092380241 | DarkCube Biometrics | 1 846,80 | 226,80 | ABSA bank 9234432919 |
| 55, 125 and 195 | Friday, 04 December 2009 | DCI092380246 | DarkCube Biometrics | 2 462,40 | 302,40 | ABSA bank 9234432919 |
| 56, 126 and 196 | Tuesday, 29 December 2009 | DCI092380299 | DarkCube Biometrics | 1 231,20 | 151,20 | ABSA bank 9234432919 |
| 57, 127 and 197 | Wednesday, 06 January 2010 | DCI092380298 | DarkCube Biometrics | 1 846,80 | 226,80 | ABSA bank 9234432919 |
| 58, 128 and 198 | Friday, 22 January 2010 | DCI092380569 | DarkCube Biometrics | 1 846,80 | 226,80 | ABSA bank 9234432919 |
| 59, 129 and 199 | Monday, 25 January 2010 | DCI092380555 | DarkCube Biometrics | 1 938,00 | 238,00 | ABSA bank 9234432919 |
| 60, 130 and 200 | Thursday, 28 January 2010 | DCI092380589 | DarkCube Biometrics | 1 231,20 | 151,20 | ABSA bank 9234432919 |
| 61, 131 and 201 | Thursday, 04 February 2010 | DCI092380598 | DarkCube Biometrics | 12 904,80 | 1 584,80 | ABSA bank 9234432919 |
| 62, 132 and 202 | Tuesday, 09 February 2010 | DCI092380599 | DarkCube Biometrics | 615,60 | 75,60 | ABSA bank 9234432919 |
| 63, 133 and 203 | Tuesday, 09 February 2010 | DCI092380610 | DarkCube Biometrics | 1 938,00 | 238,00 | ABSA bank 9234432919 |
| 64, 134 and 204 | Thursday, 18 February 2010 | DCI092380621 | DarkCube Biometrics | 798,00 | 98,00 | ABSA bank 9234432919 |
| 65, 135 and 205 | Thursday, 18 February 2010 | DCI092380920 | DarkCube Biometrics | 820,80 | 100,80 | ABSA bank 9234432919 |
| 66, 136 and 206 | Thursday, 18 February 2010 | DCI092380619 | DarkCube Biometrics | 1 812,60 | 222,60 | ABSA bank 9234432919 |
| 67, 137 and 207 | Thursday, 04 March 2010 | DCI092380538 | DarkCube Biometrics | 1 231,20 | 151,20 | ABSA bank 9234432919 |
| 68, 138 and 208 | Thursday, 04 March 2010 | DCI092380634 | DarkCube Biometrics | 615,60 | 75,60 | ABSA bank 9234432919 |
| 69, 139 and 209 | Friday, 05 March 2010 | DCI092380640 | DarkCube Biometrics | 1 641,60 | 201,60 | ABSA bank 9234432919 |
| 70, 140 and 210 | Tuesday, 16 March 2010 | DCI092380053 | DarkCube Biometrics | 14 227,20 | 1 747,20 | ABSA bank 9234432919 |
| 71, 141 and 211 | Tuesday, 13 April 2010 | DCI092380679 | DarkCube Biometrics | 1 288,20 | 158,20 | ABSA bank 9234432919 |
| 72, 142 and 212 | Thursday, 22 April 2010 | DCI092380722 | DarkCube Biometrics | 3 933,00 | 483,00 | ABSA bank 9234432919 |
| 73, 143 and 213 | Thursday, 22 April 2010 | DCI092380722 | DarkCube Biometrics | 6 498,00 | 798,00 | ABSA bank 9234432919 |
| 74, 144 and 214 | Thursday, 22 April 2010 | DCI092380793 | DarkCube Biometrics | 1 379,40 | 169,40 | ABSA bank 9234432919 |
| 75, 145 and 215 | Thursday, 22 April 2010 | DCI092380761 | DarkCube Biometrics | 1 687,20 | 207,20 | ABSA bank 9234432919 |
| 76, 146 and 216 | Thursday, 22 April 2010 | DCI092380799 | DarkCube Biometrics | 1 824,00 | 224,00 | ABSA bank 9234432919 |
| 77, 147 and 217 | Thursday, 22 April 2010 | DCI092380804 | DarkCube Biometrics | 1 671,24 | 205,24 | ABSA bank 9234432919 |
| 78, 148 and 218 | Thursday, 22 April 2010 | DCI092380807 | DarkCube Biometrics | 877,40 | 107,75 | ABSA bank 9234432919 |
| 79, 149 and 219 | Thursday, 22 April 2010 | DCI092380806 | DarkCube Biometrics | 11 035,20 | 1 355,20 | ABSA bank 9234432919 |
| 80, 150 and 220 | Thursday, 22 April 2010 | DCI092380833 | DarkCube Biometrics | 12 768,00 | 1 568,00 | ABSA bank 9234432919 |
| 81, 151 and 221 | Thursday, 22 April 2010 | DCI092380835 | DarkCube Biometrics | 889,20 | 109,20 | ABSA bank 9234432919 |
| 82, 152 and 222 | Thursday, 22 April 2010 | DCI092380821 | DarkCube Biometrics | 2 200,20 | 270,20 | ABSA bank 9234432919 |
| 83, 153 and 223 | Thursday, 22 April 2010 | DCI092380824 | DarkCube Biometrics | 2 154,60 | 264,60 | ABSA bank 9234432919 |
| 84, 154 and 224 | Thursday, 22 April 2010 | DCI092380899 | DarkCube Biometrics | 1 140,00 | 140,00 | ABSA bank 9234432919 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 85, 155 and 225 | DC1092380844 | Thursday, 22 April 2010 | DarkCube Biometrics | 13 338,00 | 1 638,00 | ABSA bank 9234432919 |
| 86, 156 and 226 | DC1092380847 | Thursday, 22 April 2010 | DarkCube Biometrics | 615,60 | 75,60 | ABSA bank 9234432919 |
| 87, 157 and 227 | DC1092380701 | Thursday, 22 April 2010 | DarkCube Biometrics | 1 026,00 | 126,00 | ABSA bank 9234432919 |
| 88, 158 and 228 | DC1092380855 | Thursday, 22 April 2010 | DarkCube Biometrics | 61 674,00 | 7 574,00 | ABSA bank 9234432919 |
| 89, 159 and 229 | DC1092380358 | Thursday, 22 April 2010 | DarkCube Biometrics | 1 288,20 | 158,20 | ABSA bank 9234432919 |
| 90, 160 and 230 | DC1092380857 | Thursday, 22 April 2010 | DarkCube Biometrics | 2 200,20 | 270,20 | ABSA bank 9234432919 |
| 91, 161 and 231 | DC1092380859 | Thursday, 22 April 2010 | DarkCube Biometrics | 1 846,80 | 226,80 | ABSA bank 9234432919 |
| 92, 162 and 232 | DC1092380599 | Thursday, 22 April 2010 | DarkCube Biometrics | 1 048,80 | 128,80 | ABSA bank 9234432919 |
| 93, 163 and 233 | DC1092380861 | Thursday, 16 September 2010 | DarkCube Biometrics | 1 938,00 | 238,00 | ABSA bank 9234432919 |
| 94, 164 and 234 | DC1092380873 | Friday, 17 September 2010 | DarkCube Biometrics | 22 663,20 | 2 783,20 | ABSA bank 9234432919 |
| 95, 165 and 235 | DC1092380878 | Monday, 20 September 2010 | DarkCube Biometrics | 38 714,40 | 4 754,40 | ABSA bank 9234432919 |
| 96, 166 and 236 | DC1092380883 | Thursday, 07 October 2010 | DarkCube Biometrics | 2 599,20 | 319,20 | ABSA bank 9234432919 |
| 97, 167 and 237 | DC1092380891 | Thursday, 14 October 2010 | DarkCube Biometrics | 1 801,20 | 221,20 | ABSA bank 9234432919 |
| 98, 168 and 238 | DC1092380928 | Wednesday, 27 October 2010 | DarkCube Biometrics | 17 898,00 | 2 198,00 | ABSA bank 9234432919 |
| 99, 169 and 239 | DC1092380933 | Friday, 29 October 2010 | DarkCube Biometrics | 26 573,40 | 3 263,40 | ABSA bank 9234432919 |
| 100, 170 and 240 | DC1092380938 | Thursday, 04 November 2010 | DarkCube Biometrics | 9 348,00 | 1 148,00 | ABSA bank 9234432919 |
| 101, 171 and 241 | DC1092380948 | Wednesday, 10 November 2010 | DarkCube Biometrics | 4 058,40 | 498,40 | ABSA bank 9234432919 |
| 102, 172 and 242 | DC1092380954 | Friday, 03 December 2010 | DarkCube Biometrics | 1 744,20 | 214,20 | ABSA bank 9234432919 |
| 103, 173 and 243 | DC1092380951 | Friday, 03 December 2010 | DarkCube Biometrics | 1 447,80 | 177,80 | ABSA bank 9234432919 |
| 104, 174 and 244 | DC1092380963 | Tuesday, 21 December 2010 | DarkCube Biometrics | 60 986,20 | 7 489,53 | ABSA bank 9234432919 |
| 105, 175 and 245 | DC1092380969 | Monday, 10 January 2011 | DarkCube Biometrics | 2 156,00 | 266,00 | ABSA bank 9234432919 |
| 106, 176 and 246 | DC1092380973 | Wednesday, 19 January 2011 | DarkCube Biometrics | 2 017,80 | 247,80 | ABSA bank 9234432919 |
| 107, 177 and 247 | DC1092381484 | Friday, 04 March 2011 | DarkCube Biometrics | 17 784,00 | 2 184,00 | ABSA bank 9234432919 |
| 108, 178 and 248 | DC1092381485 | Wednesday, 09 March 2011 | DarkCube Biometrics | 23 712,00 | 2 912,00 | ABSA bank 9234432919 |
| 109, 179 and 249 | DC1092381486 | Monday, 14 March 2011 | DarkCube Biometrics | 18 126,00 | 2 226,00 | ABSA bank 9234432919 |
| 110, 180 and 250 | DC1092381509 | Monday, 28 March 2011 | DarkCube Biometrics | 13 286,70 | 1 631,70 | ABSA bank 9234432919 |
| 111, 181 and 251 | DC1092381487 | Thursday, 31 March 2011 | DarkCube Biometrics | 13 286,70 | 1 631,70 | ABSA bank 9234432919 |
| 112, 182 and 252 | DC1092381483 | Friday, 08 April 2011 | DarkCube Biometrics | 20 325,06 | 2 496,06 | ABSA bank 9234432919 |
| 113, 183 and 253 | DC1092381428 | Tuesday, 26 April 2011 | DarkCube Biometrics | 47 988,30 | 5 893,30 | ABSA bank 9234432919 |
| 114, 184 and 254 | DC1092381488 | Wednesday, 04 May 2011 | DarkCube Biometrics | 1 744,20 | 214,20 | ABSA bank 9234432919 |
| 115, 185 and 255 | DC1092381489 | Wednesday, 04 May 2011 | DarkCube Biometrics | 1 938,00 | 238,00 | ABSA bank 9234432919 |
| 116, 186 and 256 | DC1092381490 | Wednesday, 04 May 2011 | DarkCube Biometrics | 786,60 | 96,60 | ABSA bank 9234432919 |
| 117, 187 and 257 | DC1092381498 | Tuesday, 17 May 2011 | DarkCube Biometrics | 2 205,90 | 270,90 | ABSA bank 9234432919 |
| 118, 188 and 258 | DC1092381503 | Tuesday, 24 May 2011 | DarkCube Biometrics | 12 802,20 | 1 572,20 | ABSA bank 9234432919 |
| 119, 189 and 259 | DC1092381504 | Tuesday, 24 May 2011 | DarkCube Biometrics | 1 972,20 | 242,20 | ABSA bank 9234432919 |
| 120, 190 and 260 | DC1092381506 | Wednesday, 25 May 2011 | DarkCube Biometrics | 21 055,80 | 2 585,80 | ABSA bank 9234432919 |
| 121, 191 and 261 | DC1092381508 | Friday, 27 May 2011 | DarkCube Biometrics | 1 972,20 | 242,20 | ABSA bank 9234432919 |

## SCHEDULE 3

| COUNT | COLUMN A Date | COLUMN B Invoice description | COLUMN C Service Provider | COLUMN D Total amount of invoice | COLUMN E VAT portion indicated on invoice | COLUMN F Bank account details of service provider stipulated on invoice |
|---|---|---|---|---|---|---|
| 262, 284 and 305 | Friday, 26 March 2010 | C-2848 | SolidSource | 17 784,00 | 2 184,00 | ABSA bank 9242913591 |
| 263, 285 and 307 | Thursday, 01 April 2010 | C-2850 | SolidSource | 41 570,10 | 5 105,10 | ABSA bank 9242913591 |
| 264, 286 and 308 | Monday, 26 July 2010 | C-3133 | SolidSource | 1 778,40 | 218,40 | ABSA bank 9242913591 |
| 265, 287 and 309 | Wednesday, 28 July 2010 | C-3298 | SolidSource | 47 424,00 | 5 824,00 | ABSA bank 9242913591 |
| 266, 288 and 310 | Monday, 02 August 2010 | C-3314 | SolidSource | 2 050,00 | 252,00 | ABSA bank 9242913591 |
| 267, 289 and 311 | Monday, 16 August 2010 | C-3317 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 268, 290 and 312 | Friday, 20 August 2010 | C-3319 | SolidSource | 3 420,00 | 420,00 | ABSA bank 9242913591 |
| 269, 291 and 313 | Thursday, 26 August 2010 | C-3322 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 270, 292 and 314 | Monday, 06 September 2010 | C-3327 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 271, 293 and 315 | Monday, 20 September 2010 | C-3329 | SolidSource | 18 810,00 | 2 310,00 | ABSA bank 9242913591 |
| 272, 294 and 316 | Thursday, 07 October 2010 | C-3338 | SolidSource | 10 032,00 | 1 232,00 | ABSA bank 9242913591 |
| 273, 295 and 317 | Tuesday, 09 November 2010 | C-3347 | SolidSource | 51 870,00 | 6 370,00 | ABSA bank 9242913591 |
| 274, 296 and 318 | Monday, 22 November 2010 | C-3349 | SolidSource | 2 736,00 | 336,00 | ABSA bank 9242913591 |
| 275, 297 and 319 | Friday, 03 December 2010 | C-3350 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 276, 298 and 320 | Monday, 10 January 2011 | C-3350 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 277, 299 and 321 | Wednesday, 19 January 2011 | C-3353 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 278, 300 and 322 | Monday, 07 February 2011 | C-3359 | SolidSource | 1 938,00 | 238,00 | ABSA bank 9242913591 |
| 279, 301 and 323 | Friday, 11 February 2011 | C-3359 | SolidSource | 6 270,00 | 770,00 | ABSA bank 9242913591 |
| 280, 302 and 324 | Friday, 11 February 2011 | C-3361 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 281, 303 and 325 | Thursday, 24 March 2011 | C-3363 | SolidSource | 1 938,00 | 238,00 | ABSA bank 9242913591 |
| 282, 304 and 326 | Tuesday, 24 May 2011 | C-3362 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |
| 283, 305 and 327 | Friday, 27 May 2011 | C-3362 | SolidSource | 2 052,00 | 252,00 | ABSA bank 9242913591 |

## SCHEDULE 4

| COUNT | COLUMN A | COLUMN B | COLUMN C | COLUMN D | COLUMN E | COLUMN F |
|---|---|---|---|---|---|---|
| | Date | Invoice description | Service Provider | Total amount of invoice | VAT portion indicated on invoice | Bank account details of service provider stipulated on invoice |
| 328, 345 and 362 | Thursday, 01 April 2010 | 91992-2 | StorVault Africa | 12 706,33 | 1 560,43 | ABSA bank 9243264866 |
| 329, 346 and 363 | Thursday, 01 April 2010 | 91992-1 | StorVault Africa | 48 906,00 | 6 006,00 | ABSA bank 9243264866 |
| 330, 347 and 364 | Tuesday, 13 April 2010 | 91992-3 | StorVault Africa | 889,20 | 109,20 | ABSA bank 9243264866 |
| 331, 348 and 365 | Wednesday, 21 April 2010 | 91992-4 | StorVault Africa | 36 936,00 | 4 536,00 | ABSA bank 9243264866 |
| 332, 349 and 366 | Tuesday, 20 July 2010 | 91992-6 | StorVault Africa | 13 235,40 | 1 625,40 | ABSA bank 9243264866 |
| 333, 350 and 367 | Monday, 02 August 2010 | 91992-7 | StorVault Africa | 1 980,18 | 243,18 | ABSA bank 9243264866 |
| 334, 351 and 368 | Thursday, 26 August 2010 | 91992-7 | StorVault Africa | 549,42 | 67,47 | ABSA bank 9243264866 |
| 335, 352 and 369 | Thursday, 09 September 2010 | 91992-8 | StorVault Africa | 1 648,27 | 202,42 | ABSA bank 9243264866 |
| 336, 353 and 370 | Thursday, 14 October 2010 | 91992-9 | StorVault Africa | 1 648,27 | 202,42 | ABSA bank 9243264866 |
| 337, 354 and 371 | Friday, 29 October 2010 | 91992-10 | StorVault Africa | 1 648,27 | 202,42 | ABSA bank 9243264866 |
| 338, 355 and 372 | Tuesday, 07 December 2010 | 91992-11 | StorVault Africa | 1 615,95 | 198,45 | ABSA bank 9243264866 |
| 339, 356 and 373 | Monday, 10 January 2011 | 91992-12 | StorVault Africa | 1 949,40 | 239,40 | ABSA bank 9243264866 |
| 340, 357 and 374 | Friday, 11 February 2011 | 91992-11 | StorVault Africa | 5 950,80 | 730,80 | ABSA bank 9243264866 |
| 341, 358 and 375 | Friday, 11 February 2011 | 91992-12 | StorVault Africa | 2 093,04 | 257,04 | ABSA bank 9243264866 |
| 342, 359 and 376 | Friday, 11 February 2011 | 91992-13 | StorVault Africa | 2 235,54 | 274,54 | ABSA bank 9243264866 |
| 343, 360 and 377 | Friday, 11 February 2011 | 91992-14 | StorVault Africa | 2 235,54 | 274,54 | ABSA bank 9243264866 |
| 344, 361 and 378 | Wednesday, 11 May 2011 | 91992-14 | StorVault Africa | 12 034,98 | 1 477,98 | ABSA bank 9243264866 |
| | | | **Total** | 148 262,59 | 18 207,69 | |