UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In the Matter of the Extradition of ) | |
| ) | Case. No. 21-mj-4149 |
| Riccardo Paolo Spagni a/k/a Ricardo Paolo Spagni ) | U.S. Magistrate Judge Alistair Newbern |

### GOVERNMENT'S RESPONSE TO FUGITIVE'S REQUEST FOR BAIL PENDING INTERNATIONAL EXTRADITION PROCEEDINGS

The United States, in fulfilling its treaty[1] obligations to the Government of South Africa, submits this response to the bail request (DE# 6) of fugitive Riccardo Paolo Spagni a/k/a Ricardo Paolo Spagni's ("Spagni" or the "fugitive"), and in further support of its Memorandum of Extradition Law and Request for Detention Pending Extradition Proceedings (DE# 3). As discussed below, Spagni fails to overcome the strong presumption that governs in international extradition proceedings because he fails to meet his burden to demonstrate that he is not a flight risk, that he is not a danger to the community, and that special circumstances warrant bail. Accordingly, bail is inappropriate.

### BACKGROUND

For brevity, the United States incorporates by reference the relevant background its Complaint and prior briefing (DE# 1-3) set forth, unless otherwise noted herein.

Spagni does not dispute that he is the person whose provisional arrest South Africa requested with a view toward extradition. He concedes that he is the subject of a charging document in Case number F93/2017 in the Regional Division of the Cape at Cape Town, South Africa, accusing him of, *inter alia*, 126 counts of fraud (or, in the alternative, violating section 59(1)h of Value Added Tax Act, Act 89, of 1991). (*See* DE# 6-1).

---

[1] Extradition Treaty Between the Government of the United States of America and the Government of the Republic of South Africa, U.S.-S. Afr., Sept. 16, 1999, S. TREATY DOC. NO. 106-24 (2000) (the "Treaty").

Spagni admits that he has been aware of charges against him since October 2017 and, in fact, "reported to court to answer the charges against him" for the ensuing two and a half years. (DE# 6, PageID#36). He admits that although the parties in South Africa agreed, due to COVID-related concerns, to delay the matter until a March 24, 2021, he left South Africa on March 21, 2021, arriving in Bermuda on March 22, 2021. (*Id.* at 4-5). Spagni also admits that on March 30, 2021, while he was in Bermuda, he received notice that the South African court had scheduled another hearing for April 19, 2021, yet he chose not to return to South Africa, purportedly because he believed this would require flying on three planes through two airports. (*Id.* at 5). Further, Spagni concedes that on April 13, 2021, he left Bermuda for the United States, arriving in the United States on April 14, 2021, on a visa. (*Id.* at 4-5).[2] As the enclosed letter from South Africa's National Prosecuting Authority (**Exhibit A** hereto) reflects, "[a]t no stage was [Spagni's] decision to travel to the United States or to apply for permission to travel as non-immigrant worker or the need to expedite the criminal trial so as to potentially facilitate his freedom to relocate to the United States communicated to the trial Court or the prosecution," and no arrangements had been made for the trial to continue virtually.

Further, Spagni does not dispute that on July 21, 2021 – approximately three months after he arrived in the United States – U.S. law enforcement officers provisionally arrested him at the Nashville International Airport, where he was attempting to transit between New York and Mexico. (*See* DE# 7.)

---

[2] It is unknown at this time whether the government was aware of the pending South African criminal proceedings when it granted the visa.

# ARGUMENT

For brevity, the United States incorporates by reference the relevant argument and analysis in its prior briefing (DE# 3 at PageID#17-24), unless otherwise noted herein.

The Court should deny Spagni's bail request. He is an international fugitive who, given the facts of this case, fails to overcome the strong presumption that he is a flight risk. This alone is fatal to a bail application in the international extradition context. He also poses a danger to the community and fails to prove special circumstances that, taken alone or together, would justify granting bail.

I. **Spagni Is a Flight Risk**

Spagni is not just a flight risk, but a high flight risk. He has a history of evading justice. He also has extensive experience with international travel, and has undertaken three international trips since March 2021 despite his purported fear of COVID-19. In fact, he was arrested in the instant matter at the Nashville International Airport while attempting to leave the United States. He has resources for further flight, including significant financial means and access to a European Union passport. And he has strong incentive to continue fleeing.

The statements Spagni makes in his bail request underscore that he has a history of failing to appear and evading justice. He concedes that he has been aware of the South African charges against him since as early as October 2017, "report[ing] to court to answer the charges against him" for the ensuing two and a half years. (DE# 6 at PageID#36.) He admits to leaving South Africa for Bermuda on March 21, 2021, despite an upcoming court date scheduled for March 24, 2021. (*Id.* at 4-5.) He further admits to leaving Bermuda for the United States on April 13, 2021, despite having notice of another upcoming court date scheduled for April 19, 2021. (*Id.*)

Although Spagni claims that he would have been willing to appear remotely from abroad

in his criminal proceedings, he neither asserts nor shows that the South African court gave him permission to do so. Nor has he willingly returned to South Africa since March 2021 to face the charges against him. *See, e.g.*, *United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution.") (citing *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir. 1976)); *Beresford-Redman*, 753 F. Supp. 2d at 1091 (finding fugitive to be a flight risk because, among other things, he could have "return[ed] to Mexico and voluntarily surrender[ed], [but] he has not done so"). The Court, therefore, has every reason to surmise that Spagni will continue fleeing justice if released on bail.

Further, Spagni has the resources to flee. He admits to historically wide-ranging travel – for example, to cryptocurrency-related conferences in locations including Estonia, the United States, the Netherlands, Germany, Mexico, England, Italy, South Korea, and Switzerland between 2014 and 2020.[3] (DE# 6 at PageID#37.) Also, as noted above, Spagni has undertaken at least three international trips since March 2021, despite his purported concerns relating to COVID-19. In the instant matter, he was apprehended at the Nashville International Airport while attempting to travel to Mexico. Spagni also has the financial assets to facilitate further travel. For example, he admits to owning two properties in New York and does not dispute holding significant cryptocurrency assets or purchasing a watch valued at $800,000.

---

[3] Spagni neglects to indicate whether he continued traveling between February 2020, when he purportedly started preparing to emigrate to the United States, and March 2021, when he left South Africa for Bermuda.

4
Case 3:21-mj-04149 Document 13 Filed 08/04/21 Page 4 of 17 PageID #: 128

Moreover, Spagni historically has held an Italian passport, which functionally grants him access not only to Italy, but to many countries in the European Union. *See In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1286 (S.D. Fla. 2017) (noting that fugitive from Panama had traveled using Italian passport). Spagni fails to cite any case in which a court found that a fugitive similar to him – with a passport to a third country and apprehended on an extradition warrant at a U.S. airport while attempting to travel to a fourth country – was not a flight risk. Even if the Court were to order Spagni to surrender all of his current travel documents, as a practical matter, there would be no way to prevent Italy from issuing him a new passport.

Finally, Spagni has a strong incentive to disappear, whether to a third country or to an underground location within the United states, given the difficulty of defeating extradition and the substantial potential sentence he faces if convicted. (*See* DE# 3 at PageID#22-23 (citing cases).)[4] This strong incentive to flee overshadows any limited connection he may have developed since moving to upstate New York, which is approximately 900 miles from this District, fewer than four months ago on a non-immigrant visa.

For all these reasons, Spagni is a flight risk. No combination of bail conditions or promises can ensure his appearance before this Court and the United States' ability to fulfill its treaty obligations to South Africa. The flight risk Spagni poses is, alone, fatal to his bail request. *See,*

---

[4] South Africa recently clarified that Spagni faces a potential penalty of fifteen years imprisonment if convicted of common law fraud, as the offense is subject to the court's punitive jurisdiction, and a regional court in South Africa can impose a custodial sentence of not more than fifteen years. (*See* Ex. A.) Spagni mistakenly asserts that fraud carries a potential penalty of "only" 60 months imprisonment under South African law. (DE# 6 at PageID#50.) In an effort to support this assertion, he cites a portion of the charge sheet that appears to specify that 60 months imprisonment is the potential penalty for violating section 59(h)(1) of the Value Added Tax ("VAT") Act, Act 89, of 1991. The charge sheet, however, explains that the VAT Act charge is in the "alternative" to the more severe offense of common law fraud. (*E.g.*, DE# 6-1 at PageID#61; *see also* Ex. A.) In any event, Spagni is charged with several counts of a serious offense and faces a substantial potential sentence if convicted.

*e.g.*, *In re Extradition of Saldana*, No. 09-MJ-00014-P, 2009 WL 2134377, at *3 (W.D. Tenn. July 10, 2009) ("Courts have consistently held that the absence of flight risk is not itself a special circumstance, but rather a separate threshold determination for the court to make in deciding whether to grant bail in extradition cases. In other words, the [fugitive] must demonstrate the absence of risk of flight in addition to establishing the existence of a special circumstance." (citations omitted). Accordingly, the Court need not reach the question of whether Spagni has met his burden on the remaining factors.

## II.    Spagni Is a Danger to the Community

Spagni also presents a danger to the community. (*See* DE# 3 at PageID#23 (*citing, e.g.*, *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (noting that "danger may, at least in some cases, encompass pecuniary or economic harm"). Spagni stands accused of not just one instance of fraud, but of defrauding his former employer 126 times over approximately eighteen months for a total of some one million South African rand. Serially fraudulent conduct indicates "propensity to commit further crimes" and danger to the community, "even if the resulting harm is solely economic." *United States v. Madoff*, 586 F. Supp. 2d 240, 252-53 (S.D.N.Y. 2009); *see also Reynolds*, 956 F.2d at 192 (finding that defendant charged with mail fraud failed to show by clear and convincing evidence that he did not pose an economic danger to the community); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "defendant's propensity to commit crime generally [labor extortion and racketeering], even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger"); *United States v. DeSimone*, No. 09-024S, 2009 WL 904688, at *11 (D.R.I. April 1, 2009) (denying bail because defendant had continued to defraud investors while serving a seven-year term of probation for insurance fraud

and, therefore, had "shown an ability and a propensity to commit economic crimes"). This, too, renders bail inappropriate.

### III. Spagni Fails to Present "Special Circumstances" Justifying Bail

As discussed previously, for special circumstances to be legally relevant, the Court would need to find that Spagni is not a flight risk or a danger to the community. *See, e.g.*, *United States v. Leitner*, 784 F.2d 159, 161 (2d Cir. 1986); *In re Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996). In any event, the circumstances Spagni asserts are not special as a matter of law. Viewed alone or cumulatively, they are insufficient to justify bail on any terms.

#### A. Spagni's Purported Likelihood of Success In Defeating Extradition Is Not a Special Circumstance Warranting Bail

Most courts hold that arguments regarding the substantive merits of an extradition request are appropriate subjects of the *extradition* hearing, not the bail hearing. Moreover, to the extent courts have entertained such claims at the bail stage, most have required the fugitive to establish a "high probability" of success on the merits. Spagni fails to make such a showing. At this stage of the proceedings, his claim is premature and speculative. Even at the extradition hearing, Spagni will not be permitted to introduce material that attacks the credibility of South Africa's witnesses.

Arguments concerning the substantive merits of an extradition request are properly raised at the fugitive's extradition hearing and are immaterial to his prior bail determination. *See United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 61 (D. Mass. 2010); *In re Sacirbegovic*, 280 F. Supp. 2d 81, 88 (S.D.N.Y. 2003) (stating that probability of success against extradition is a subject reserved for the extradition hearing); *In re Extradition of Sidali*, 868 F. Supp. 656, 658–59 (D.N.J.

7

1994) (stating that probability of success against extradition "relate[s] to whether [the fugitive] should be extradited[,] not whether he should be released on bail").

To the extent outlier courts have considered, at the bail stage, the likelihood that a fugitive will succeed in defeating extradition, they mostly have required the fugitive to establish a "high" probability of success, not just a substantial likelihood. *See, e.g.*, *Kin-Hong v. United States*, 83 F.3d 523, 524-25 (1st Cir. 1996) (noting that "courts have held that [special] circumstances may . . . include the raising of substantial claims against extradition on which the [fugitive] has a *high probability* of success," but reversing order granting bail where, "[w]hile arguably [the fugitive] may ultimately prevail in his challenges to his extradition, the record does not establish probability of success one way or another) (emphasis added); *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *In re Extradition of Garcia*, 615 F. Supp. 2d 162, 171 (S.D.N.Y. 2009).

Spagni fails to establish a *high likelihood* of success in defeating extradition. In his view, South Africa's extradition request will fail to establish probable cause to believe that the fraud proceeds were paid to an account he controlled because (1) certain ASBA bank offices have indicated that a 2009 fire destroyed relevant records for accounts Spagni allegedly controlled; and (2) incriminating testimony from corroborating witnesses "is likely to be unreliable." (DE# 6 at PageID#46.)

As an initial matter, Spagni is offering a speculative, premature critique of an extradition request South Africa has yet to submit. In the provisional arrest context, the Treaty provides that the Court "may," in its discretion, discharge a fugitive from custody if the U.S. Department of State does not receive South Africa's formal extradition request by "the expiration of sixty (60) days from the date of provisional arrest." Treaty art. 13(4); *see also* 18 U.S.C. § 3184 (providing that *at the extradition hearing*, the court will determine whether the evidence is "sufficient to

sustain the charge under the provisions of the proper treaty or convention") (emphasis added). Accordingly, the Court should not entertain Spagni's challenge to the merits of the extradition request at this preliminary stage.

In any event, South Africa indicates that ABSA bank has provided electronic records reflecting that Spagni was the account holder for the relevant accounts. (*See* Ex. A.) Moreover, at the extradition hearing, Spagni will not be permitted to introduce material that contradicts South Africa's evidence or challenges witness credibility. *See, e.g.*, *Bovio v. United States*, 989 F.2d 255, 259 (7th Cir. 1993) (rejecting fugitive's argument that "there is no competent evidence to support a finding of probable cause because [witness's] statement was made five years after the investigation and there is no record of original notes from witness interviews," reasoning that such arguments "go to credibility," and noting that "issues of credibility are to be determined at [the foreign] trial") (citations omitted); *see also In re Extradition of Solis*, 402 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) (holding that fugitive could not challenge veracity or validity of witness's statement because "a fugitive in international extradition proceedings is not permitted to introduce evidence that contradicts the evidence submitted by the requesting country"); *In re Extradition of Powell*, 4 F. Supp. 2d 945, 958 (S.D. Cal. 1998) (precluding fugitive from presenting material "as to the unreliability of witnesses because . . . [that would] change an extradition hearing into more than it is meant to be, *i.e.*, [change it into] a minitrial").

For these reasons, Spagni's claims about how he will fare on the merits at the extradition hearing are not a special circumstance warranting bail.

B. **Spagni's Purported Health Issues Are Not a Special Circumstance**

While some courts have found that "a *serious deterioration* of health while incarcerated." may constitute a special circumstance, *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989)

9

(emphasis added), for a purported health issue to rise to the level of a special circumstance warranting bail, a fugitive must present medical proof to establish "that [his] health condition is either life-threatening or so serious that his medical needs cannot be accommodated by the jail's medical staff while in custody." *Nezirovic v. Holt*, 990 F. Supp. 2d 594, 602 (W.D. Va. 2013).

Spagni presents no medical documentation to establish that he currently "requires near-constant access to an [unspecified] asthma inhaler" in addition to the unspecified twice-daily asthma treatment (or treatments) he receives. (DE# 6 at PageID#42.)[5] Further, while Spagni expresses concern about the possibility of an asthma attack, his basis for believing the facility could not appropriately treat one is unclear. *See In re Extradition of Garcia*, 761 F. Supp. 2d 468, 481 (S.D. Tex. 2010) ("[T]he exhibits provided by [fugitive] do not sufficiently explain to the Court that his condition is either life-threatening or so serious that his medical needs cannot be accommodated"); *In re Extradition of Burgos Noeller*, No. 17 CR 664, 2017 WL 6462358, at *4 (N.D. Ill. Dec. 19, 2017) (finding no special circumstances for epileptic fugitive whose submission "demonstrate[s] neither a pressing nor a plain health condition that cannot be managed by the [correctional facility]"). Courts routinely have declined to find that health concerns rise to the level of a special circumstance warranting bail.[6] *See Garcia*, 761 F. Supp. 2d at 481 ("[I]f most

---

[5] In an abundance of caution, the government inquired with the county jail where Spagni is currently housed. The medical staff there advised that if Spagni believes he requires 24/7 access to an inhaler, he should submit a medical request within the jail to be assessed by a doctor.

[6] *See, e.g.*, *In re Extradition of Gohir*, No. 2:14-MJ-00314-CWH, 2014 WL 2123402, at *12 (D. Nev. May 21, 2014) (rejecting claim that detention facility was unable to meet diabetic fugitive's needs); *Martinelli Berrocal*, 263 F. Supp. 3d at 1301 (rejecting fugitive's claim that his age, recent surgery, medications, and stress warranted bail); *United States v. Snyder*, No. 13–7082–MJ, 2013 WL 1364275, at *8 (D. Ariz. Apr. 3, 2013) (denying bail for fugitive with history of ovarian cancer who stated that she had been vomiting blood and claimed that her condition was worsening but had not sought treatment, finding that fugitive's "health condition is concerning, but it is not a special circumstance that supports her release," and that she "could obtain treatment for her health condition while incarcerated") (citing cases); *United States v. Nolan*, No. 08-M-97, 2009 WL 4544699, at *3 (N.D. Ill. Dec. 1, 2009) ("deterioration of [fugitive's] health" based on placement

health problems constituted special circumstances serving as a basis for release, both genuine and fabricated illnesses could potentially empty federal prisons."); *In re Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290–91 (S.D.N.Y. 1993) ("Were health problems a basis for release, both actual and feigned illnesses could rapidly empty custodial facilities. Nothing convinces me that the [fugitives'] health problems are unique or cannot be dealt with while in custody.").

Spagni also asserts that his concern about potentially contracting a breakthrough COVID infection constitutes a "special circumstance." As noted above, despite this purported concern, he has undertaken at least three international trips of which the government is aware since March 2021.[7] Courts repeatedly have rejected claims that COVID-19 presents a special circumstance, reasoning that "while a [fugitive] may have certain medical concerns and a risk of contracting the coronavirus, the current pandemic exists globally." *In re Extradition of Lyons Muskus*, No. 21-21781-MC, 2021 WL 3173340, at *10 (S.D. Fla. July 27, 2021); *In re Extradition of Bell*, 2021 WL 1616127, at *6 (S.D. Fla. Apr. 26, 2021) ("[T]he COVID-19 global pandemic is just that: a *global* pandemic that exists in the UK as well as in this country.") (emphasis in original). Accordingly, even before COVID-19 vaccines were available, courts routinely denied bail for

---

in solitary confinement, while receiving treatment for skin cancer, is not a special circumstance); *In re Extradition of Huerta*, No. H-08-342M, 2008 WL 2557514, at *2 (S.D. Tex. June 23, 2008) ("While [71-year-old fugitive]'s medical conditions [diabetes requiring daily medication and a strict diet; digestive difficulties and frequent bathroom needs resulting from surgical removal of most of the lower intestines; prostate problems; high blood pressure; and anemia] are unquestionably serious, they are not life-threatening, nor are they so novel or complex as to be beyond the capacity of federal authorities to manage while he is in their custody.").

[7] Additionally, there is a report online indicating that despite the pandemic, Spagni was undeterred from traveling to the Bitcoin 2021 conference in Miami and posing, unmasked, at a Miami nightclub with Paris Hilton. *See* Jessica Klein, *'Fiat is Immoral, Evil Money': 3 Days in Miami with the Bitcoin Faithful*, DECRYPT (Jun. 12, 2021), https://decrypt.co/73396/bitcoin-2021-miami-conference-covid-fiat-immoral-evil-money. The United States is not in a position to comment on whether the report is accurate. Spagni, however, bears the burden on his bail motion to convince the Court that he is not a flight risk and that "special circumstances" apply.

fugitives who cited the pandemic as presenting a special circumstance. *See, e.g.*, *In re Extradition of Carr*, No. 20 CR 370, 2020 WL 4816052, at *5 (N.D. Ill. Aug. 18, 2020) ("[G]eneralized assertions of the risk of contracting Covid-19 in jail are insufficient to constitute 'special circumstances' such that pre-hearing release would be appropriate.") (citations omitted); *Valentino v. United States Marshal*, No. 4:20-CV-304, 2020 WL 1950765, at *2 (S.D. Tex. Apr. 15, 2020) (denying bail, explaining that lack of evidence of immediate danger to 73-year-old fugitive with hypertension supports finding that COVID-19 is not a special circumstance) (citation omitted); *Risner v. Fowler*, 458 F. Supp. 3d 495, 500-05 (N.D. Tex. 2020) (denying bail, finding that risk of contracting COVID-19 was not a "special circumstance" for septuagenarian fugitive with underlying health conditions).

Spagni, moreover, has the benefit of being vaccinated against the virus. "Vaccination is the best protection against Delta." Kathy Katella, *5 Things to Know About the Delta Variant*, YALE MEDICINE (Jul. 30, 2021), https://www.yalemedicine.org/news/5-things-to-know-delta-variant-covid; *see also, e.g.*, Julie Steenhuysen, Alistair Smout, & Ari Rabinovitch, *How the Delta variant upends assumptions about the coronavirus*, REUTERS, Jul. 26, 2021, https://www.reuters.com/world/china/how-delta-variant-upends-assumptions-about-coronavirus-2021-07-26/ ("Vaccine protection remains very strong against severe disease and hospitalizations caused by *any* version of the coronavirus, and those most at risk are still the unvaccinated, according to interviews with 10 leading COVID-19 experts."); Featured Topic, *Unvaccinated at highest risk of delta variant infection*, MAYO CLINIC (Jul. 21, 2021), https://www.mayoclinichealthsystem.org/hometown-health/featured-topic/unvaccinated-at-highest-risk-of-delta-variant-infection ("'The vaccines we have available in the U.S. . . . are all extraordinarily effective against death, hospitalization and severe disease due to the delta variant,

as well as the other variants.'"); Daniel C. DeSimone, M.D., *COVID-19 variants: What's the concern?* MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/covid-variant/faq-20505779 (last updated Jul. 15, 2021) (citing research that suggests both the Pfizer-BioNTch and Moderna vaccines are "96% effective at preventing severe disease with the COVID-19 virus caused by the delta variant").

Accordingly, Spagni fails to establish that his health concerns qualify as a special circumstance to justify bail.

### C. Spagni's Claims Concerning South Africa's Delay are Not a Special Circumstance

Spagni appears to assert that South Africa's alleged delay in prosecuting him between 2011 and the approximate start of the pandemic gives rise to a "special circumstance" for bail purposes. He is mistaken. *See, e.g.*, *Martin v. Warden*, 993 F.2d 824, 827, 830 (11th Cir. 1993) (finding seventeen-year delay in seeking extradition not a special circumstance for bail purposes or a bar to extradition); *United States v. Risner*, No. 3:18-MJ-765-BN, 2018 WL 6809796, at *23 (N.D. Tex. Dec. 27, 2018) (rejecting claim that delay of twenty-plus years between offense and bail hearing constituted special circumstance warranting bail); *In re Extradition of Drumm*, 150 F. Supp. 3d 92, 98-99 (D. Mass. 2015) (finding seven-year delay in seeking extradition not a special circumstance warranting bail); *Nezirovic*, 990 F. Supp. 2d at 604 (finding twenty-year delay in Bosnia's pursuing extradition not a special circumstance warranting bail); *United States v. DeLorea*, 2006 WL 151.8981, at *3-4 (N.D. Ind. May 31, 2006) (finding ten-to-eleven-year delay in seeking extradition not a special circumstance).[8]

Instead, arguments relating to delay in seeking extradition are properly left for the

---

[8] Spagni turns to *In re Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006), to support his argument in this regard. *Chapman* is distinguishable, however, because the court in that case relied on a combination of factors to support its finding of special circumstances,

Secretary of State to consider in deciding whether to honor an extradition request. *See Martin*, 993 F.2d at 830 (stating that fugitive "should direct his argument that extradition is unjust in this case based on Canada's alleged lengthy delay in seeking extradition or on humanitarian grounds to the Executive Branch"); *Kamrin*, 725 F.2d at 1227 ("When the United States is the requested country, delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward. The delay may not, however, serve as a defense to judicial extradition proceedings.") (citation omitted)

Moreover, those courts that have considered delay a factor generally did so "where the extradition hearing itself was delayed or the [fugitive]'s liberty interests were greatly affected." *Carr*, 2020 WL 4816052, at *4 (quoting *In re Extradition of Budrys*, No. 19 M 179, 2019 WL 1958566, at *3 (N.D. Ill. May 2, 2019)); *see, e.g.*, *United States v. Bowman*, No. 19-MJ-05089-JLB-1, 2020 WL 835342, at *5 (S.D. Cal. Feb. 20, 2020) (granting bail where charged offenses occurred more than fifty years prior, requesting government failed to investigate until four years after the victims' claims, and requesting government did not pursue extradition until over three years after obtaining arrest warrant); *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 57–58 (D. Mass. 2010) (finding "special circumstance," where, among other things, requesting country did not actively pursue twenty-five year-old charge and delayed three years in requesting

---

including that the respondents "themselves had a television show in which they pursued fugitives." *Carr*, 2020 WL 4816052, at *5 & n.2. Specifically, the fugitives were featured on the popular cable program, "Dog: The Bounty Hunter," which chronicled their efforts to track down fugitives, attracted millions of viewers each week, and often depicted the respondents exhorting fugitives to turn their lives around and comply with the law. *Chapman*, 459 F. Supp. 2d at 1025. The court's findings included that that the respondents "have dedicated their lives to pursuing fugitives" and that their "livelihoods and public images rest on their commitment to upholding the law." *Id.* at 1027. Moreover, as another district court has observed, *Chapman* is an "outlier" in its consideration of delay in seeking extradition as a special circumstance. *Drumm v. McDonald*, NO. 15–14221–RGS, 2016 WL 111411, at *5 & n.14 (D. Mass. Jan. 11, 2016) ("[T]he length of the investigation by the demanding State is not a concern for the receiving State").

extradition, and U.S. government delayed approximately two years before seeking provisional arrest warrant). Spagni has not demonstrated that South Africa's alleged delay adversely affected his liberty interests. *See Budrys*, 2019 WL 1958566, at *3. Rather, he indicates that he was at liberty in South Africa (and that the parties jointly agreed to COVID-related delays). Further, his provisional arrest within four months of arriving in the United States reflects that both South Africa and the United States are attending to this case.

### D. Spagni's Claim Concerning Availability of Bail in South Africa Is Not a Special Circumstance

Spagni asserts that South African law allows for the possibility of bail in South Africa's domestic fraud prosecutions. Even assuming *arguendo* that this representation is accurate, the "majority view" among U.S. courts is that availability of bail in the requesting country is not a "special circumstance." *Martinelli Berrocal*, 263 F. Supp. 3d at 1299; *see also, e.g.*, *Drumm*, 2016 WL 111411, at *4 ("[f]oreign bail practices should have no role in shaping the discharge by a United States court of its limited duties in adjudicating an extradition demand") (citation omitted); *Gohir*, 2014 WL 2123402, at *12-13 (D. Nev. May 21, 2014); *In re Extradition of Orozco*, 268 F.Supp.2d 1115, 1117 (D. Ariz. 2003); *In re Extradition of Rouvier*, 839 F. Supp. 537, 540 (N.D. Ill. 1993) (finding availability of bail in requesting country an "improper" bail consideration).

The purpose of an international extradition proceeding "is not to mirror the internal bail practices of the requesting country," but, rather, to comply with treaty obligations to deliver fugitives to the requesting country if the conditions for extradition are met. *In re Extradition of Sutton*, 898 F. Supp. 691, 695 (E.D. Mo. 1995) (internal quotation marks and citation omitted). The strong presumption against bail in international extradition proceedings (*see* DE# 3 at PageID#18), does not contemplate that U.S. extradition courts will endeavor to "decide what legal conclusion a [foreign] court would reach on bail based on its interpretation of [foreign] criminal

15

procedure and common practice in [the requesting country]." *Budrys*, 2019 WL 1958566, at *5; *see also In re Extradition of Kyung Joon Kim*, No. CV 04–3886–ABC, 2004 WL 5782517, at *2 (C.D. Cal. July 1, 2004) (explaining that granting a fugitive bail because the underlying offense is bailable in the foreign country "is unworkable and would undermine the special circumstances requirement").

For all these reasons, Spagni fails to establish any special circumstances that, alone or cumulatively, justify his release on bail. This, too, is fatal to his bail application.

## CONCLUSION

For the foregoing reasons, the United States requests that Spagni be detained pending resolution of this extradition proceeding.

Dated: August 4, 2021

Respectfully submitted,

Mary Jane Stewart
Acting United States Attorney

By: /s Joseph P. Montminy

Assistant United States Attorney

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was uploaded onto the Court's CM/ECF system and sent via CM/ECF to all counsel of record.

/s Joseph P. Montminy

Assistant United States Attorney