UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RICCARDO PAOLO SPAGNI,<br><br>Defendant. | Case No. 3:21-mj-04149-1<br><br>Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

Defendant Riccardo Paolo Spagni was arrested in Nashville, Tennessee, on July 21, 2021, pursuant to a complaint for provisional arrest with a view towards extradition made under 18 U.S.C. § 3184. (Doc. Nos. 1, 7.) The United States filed a motion for Spagni's detention pending extradition proceedings (Doc. No. 3), to which Spagni responded in opposition (Doc. No. 6) and the United States replied (Doc. No. 13). The Magistrate Judge held an evidentiary hearing on the motion by videoconference on August 5, 2021, and August 9, 2021. (Doc. No. 14.) At the conclusion of the August 9, 2021 hearing, the Magistrate Judge granted the United States' motion and ordered that Spagni remain in the custody of the U.S. Marshal pending further proceedings. This Memorandum Order reflects the decision announced on the record on August 9, 2021.

### I.     Background

Spagni, who is a citizen of South Africa, is charged in the Western Cape Regional Court of Cape Town, South Africa, with defrauding his former employer Cape Cookies of 1,453,561.47 South African Rand (approximately $99,185 U.S. Dollars) by submitting false invoices for payment into a bank account that he controlled. (Doc. No. 1.) The events underlying the alleged fraud took place between 2009 and 2011, and Cape Cookies lodged its complaint with the South

African Police Service (SAPS) in November 2011. (Doc. No. 13-1.) Spagni was arrested in September 2012, but SAPS did not prosecute the complaint at that time. (*Id.*) SAPS pursued further investigation until August 2017, when the South African National Prosecuting Authority (NPA) formally charged Spagni. (*Id.*) Spagni was released on his own recognizance pending trial. (*Id.*) Spagni's trial began in the Western Cape, Cape Town Regional Court on August 22, 2019, and the proceedings continued on September 11–12 and November 20–22, 2019. (*Id.*) The proceedings adjourned on November 22, 2019, and Spagni was ordered to appear on April 7, 2020. (*Id.*)

On March 26, 2020, South Africa began a national lockdown due to the COVID-19 pandemic. (*Id.*) Although court convened on April 7, 2020, Spagni did not appear. (*Id.*) In Spagni's absence, his counsel made "medical representations" and the proceedings were continued. (*Id.*) In June 2020, Spagni's counsel notified the NPA that Spagni was not comfortable travelling from his home in Plettenberg Bay to Cape Town for court proceedings because he suffers from chronic asthma and is overweight, conditions that put him at a heightened risk of experiencing severe symptoms if he contracted COVID-19. (Doc. No. 6-2.) For this reason, the resumption of Spagni's trial was continued to October 8–9, 2020. (Doc. No. 13-1.) On October 7, 2020, Spagni's counsel appeared in court to provide additional medical proof and state that Spagni would not appear the next day. (*Id.*) Court was recessed until November 4, 2020, to allow Spagni to provide a doctor's report of his health risks. (*Id.*) On November 4, 2020, Spagni's counsel informed the court that Spagni had been unable to travel to see a specialist for additional medical documentation because of the pandemic. (*Id.*) The parties agreed to continue the proceedings until March 24, 2021, and April 19, 2021, for trial with Spagni present. (*Id.*)

During this time, Spagni had applied for an O-1 nonimmigrant visa to the United States, awarded to individuals who demonstrate extraordinary ability or achievement. (Doc. Nos. 6-3, 13-

1.) Spagni received a visa on October 7, 2020, that is valid from December 1, 2020, to November 30, 2023. (Doc. No. 6-3.) On March 21, 2021, Spagni and his wife travelled from South Africa to Bermuda, where they quarantined before entering the United States on April 14, 2021. (Doc. No. 6.) Spagni and his wife settled in New York, where they established two residences in Spagni's name. (*Id.*)

When court convened in South Africa on March 24, 2021, Spagni was not present. (Doc. No. 13-1.) Spagni's counsel stated that he had given Spagni notice of the trial date and that he had no knowledge of Spagni's whereabouts and was unable to contact him. (*Id.*) SAPS began efforts to locate Spagni that were unsuccessful. (*Id.*) Court again convened without Spagni present on April 19, 2021. (*Id.*) Spagni's counsel again stated that he had no knowledge of Spagni's whereabouts and moved to withdraw as Spagni's attorney. (*Id.*) The Magistrate Court of the District of Cape Town issued a warrant for Spagni's arrest. (Doc. No. 1.)

On July 21, 2021, Spagni and his wife departed New York in a private plane bound for a digital currency conference in Cabo San Lucas, Mexico. The plane landed in Nashville to refuel and to pick up Spagni's business partner Naveen Jain and Jain's wife. When Spagni disembarked from the plane, he was arrested by Deputy U.S. Marshals on a warrant issued by this Court based on a complaint for provisional arrest with a view towards extradition under 18 U.S.C. § 3184. (Doc. No. 7.) Spagni appeared with counsel later that day and was ordered detained pending further proceedings. (Doc. No. 8.)

An evidentiary hearing on the United States' motion for detention began on August 5, 2021. (Doc. No. 14.) Spagni offered the testimony of three witnesses. Spagni's business partner Naveen Jain testified that Spagni is a leader in the digital currency (or cryptocurrency) market, which Jain defined as a currency market based on "a distributed source of truth," and that Spagni's

reputation in his professional community would be irreparably damaged if he did not appear at future court proceedings. Jain testified that Spagni was travelling to Mexico openly and on his South African passport. Jain's mother, Alka Jain, testified that she was willing to serve as a third-party custodian and have Spagni reside with her in Nashville. Spagni's business counsel Jonathan Parnell also offered to serve as a third-party custodian and testified that, although Spagni previously had travelled extensively for business, he had not travelled frequently during the pandemic because of his health concerns. Parnell stated that Spagni always carried an inhaler to treat his asthma and kept inhalers in his car and office. Jain and Parnell testified generally as to Spagni's good character.

The United States called Supervisory Deputy U.S. Marshal Ashley Allen. Allen testified that, on July 21, 2021, she received notice that the Department of Justice would be seeking a warrant to arrest Spagni, who was scheduled to stop in Nashville that day on a chartered flight. Allen testified that, when the manifest for the chartered flight was filed, Spagni's name triggered a red notice flagging him as the subject of an international law enforcement request. Allen agreed that law enforcement could have, but did not, locate Spagni before his arrest because he was living openly in New York and had done things like put utilities in his name and apply for a driver's license. The United States also introduced a letter from the South African Acting Director of Public Prosecutions for the Western Cape Region (Doc. No. 13-1) regarding the events of Spagni's prosecution to date.

## II.     Legal Standard

For a defendant facing trial on federal charges in a United States District Court, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception" ordered only where no conditions of release will reasonably assure the defendant's appearance or the safety

of any other person or the community. *United States v. Salerno*, 481 U.S. 739, 755 (1987); 18 U.S.C. § 3142. A different standard applies when a person awaits extradition to face charges in another country's courts. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981) (holding "that the standard for release on bail for persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial"). In that circumstance, "bail should not ordinarily be granted[,]" although a court is not foreclosed from granting release where "special circumstances" exist. *Wright v. Henkel*, 190 U.S. 40, 63 (1903). The rationale for a presumption against release in extradition cases comes from the "overriding national interest in complying with treaty obligations" and the "diplomatic embarrassment" and "effect on foreign relations and the ability of the United States to obtain extradition of its fugitives" that would follow if a person on bail absconded and could not be returned to the country seeking extradition. *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990). Accordingly, courts are largely uniform in maintaining that the grant of bail in extradition proceedings "should be in practice an unusual and extraordinary thing," *United States ex rel. McNamara v. Henkel*, 46 F.2d 84, 84 (S.D.N.Y. 1912), allowed only "when the requirements of justice are absolutely peremptory[,]" *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909), and "only when the justification is pressing as well as plain[,]" *In re Klein*, 46 F.2d 85, 85 (S.D.N.Y. 1930).

The defendant bears the burden of establishing special circumstances justifying release, although there is no consensus among courts as to by what measure of evidence he must do so. *See United States v. Nascimento*, No. 6:19-mc-48-ORL-78GJK, 2019 WL 5853874, at *2 (M.D. Fla. Nov. 8, 2019). "[M]any courts simply do not comment on the exact evidentiary standard the potential extradite must satisfy"; most that do articulate a standard requiring proof of special circumstances by clear and convincing evidence, while "a negligible minority of courts . . . have

adopted a preponderance of the evidence standard." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 474–75 (S.D. Tex. 2010) (collecting cases). In the leading case adopting a clear and convincing evidence standard, *In re Extradition of Nacif-Borge*, the court looked to other procedural settings in which the Bail Reform Act establishes a presumption against prehearing release that the defendant bears the burden of proof to overcome. 829 F. Supp. 1210, 1215 (D. Nev. 1993). The court identified three such settings: (1) motions for release pending proceedings to address alleged violations of probation or supervised release governed by Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. § 3143(a); (2) motions for release pending sentencing by persons convicted of a crime of violence and motions for release pending appeal of a conviction governed by 18 U.S.C. § 3143(a) and (b); and (3) motions for release pending appeal of a detention order governed by 18 U.S.C. § 3145(c). *Id.* In each, the defendant must establish by clear and convincing evidence that his circumstances justify release. *Id.* This Court agrees with the *Nacif-Borge* analysis and takes guidance from these analogous statutory provisions to find that a person seeking release pending extradition must demonstrate that special circumstances exist by clear and convincing evidence.

**III.     Analysis**

The traditional considerations established by the Bail Reform Act—the risk that a defendant will flee or not appear at future court proceedings and the risk of danger to any other person or the community—are also central to the bail decision in extradition proceedings, although "[b]eing a tolerable bail risk is not in and of itself a 'special circumstance.'" *In re Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986). Only the risk of flight is an issue in Spagni's case.[1]

---

[1]     The United States argues that Spagni's release would endanger the community because of the risk he would commit further fraud. There is limited authority "that narrowly recognize[s] the possibility of economic harm" as a danger that may warrant detention, although that authority

Courts disagree as to whether flight risk should be addressed independently from the special circumstances analysis and as to whether a defendant may be detained pending extradition if he presents no risk of flight. *See In re Extradition of Garcia*, 761 F. Supp. 2d 468, 472–73 (S.D. Tex. 2010) (collecting cases). This Court finds it most in keeping with the central principles of the bail determination to consider "the absence of [a] defendant's risk of flight [as] more in the nature of a condition precedent to going forward with any determination of the existence of 'special circumstances' that could overcome the presumption against bail." *In re Extradition of Molnar*, 182 F. Supp. 2d 684, 687 (N.D. Ill. 2002); *see also In re Extradition of Schumann*, No. 18 CR 283, 2018 WL 4777562, at *6 (N.D. Ill. Oct. 3, 2018); *In re Extradition of Noeller*, No. 17 CR 664, 2017 WL 6462358, at *4 (N.D. Ill. Dec. 19, 2017). After all, the Court cannot imagine—and it appears no other court has found—special circumstances that would justify bail where there is also a genuine risk the defendant will not appear at future court proceedings.

The risk that Spagni will not appear at future court proceedings is determinative here. Spagni argues that the Court should find he poses no risk of flight because, when he travelled extensively before relocating in the United States, he always returned to South Africa for his court dates. If that were the only evidence in the record, the question of flight risk would resolve in Spagni's favor. But Spagni does not dispute the South African prosecutor's statement that he had been warned to appear in court on April 7, 2020, March 24, 2021, and on April 19, 2021, but did not appear. Nor does Spagni dispute that his counsel informed the court that he had notified Spagni

---

"rarely conclude[s] the economic harm presented rises to the level of a danger to the community for which someone should be detained[.]" *United States v. Madoff*, 586 F. Supp. 2d 240, 254 (S.D.N.Y. 2009). The only economic harm Spagni is alleged to have committed are the acts underlying his charges in South Africa, the last of which took place more than a decade ago. He has no criminal record and there are no allegations that he engaged in any other dangerous conduct. The Court therefore finds no basis for detention on grounds of a risk of harm to any other person or the community.

of the last two court dates, that he had been unable to reach Spagni, and that he had no instructions as to Spagni's whereabouts. Spagni also does not dispute that his counsel moved and was allowed to withdraw from representation on that basis at the April 19, 2021 hearing. Spagni states only that he was surprised by his counsel's representations to the court and that he thought the March 24, 2021 hearing would be only a status conference that he would not be required to attend. That is a lacking response at best. Further, Spagni's briefing establishes that it was his considered decision not to appear. Spagni states:

> On or about March 30, 2021, Spagni, who was in Bermuda, received notice that a court hearing had been set in South Africa on April 19, 2021. In order to fly from Bermuda to South Africa, Spagni and his wife would have had to fly on at least three planes through two different airports for a period of roughly 36 hours to get back to South Africa for the hearing. Spagni and his wife, who were not yet vaccinated and had just finished testing negative for COVID-19 and going through the necessary quarantine process to emigrate to emigrate to the United States, were deathly afraid of making an immediate return trip that would have doubled their exposure to COVID-19 and potentially jeopardized their emigration to the United States.

(Doc. No. 6, PageID# 38.)

That is a surprisingly candid statement of the calculation Spagni made that arriving in the United States was more important than appearing for his trial in South Africa as he had been ordered to do. "In the context of determining whether a defendant poses a substantial risk of flight, there is no meaningful distinction between a person who left a country when he learned of pending charges and one who already outside that country refuses to return to face these charges. The intent is the same—the avoidance of prosecution." *In re Extradition of Noeller*, 2017 WL 6462358, at *3; *see also Jhirad v. Ferrandina*, 536 F.2d 478, 483 (2d Cir. 1976) (finding risk of flight where a defendant's "movements were prompted by a desire to avoid and thwart the orderly workings of the judicial process"). Had Spagni notified the South African court of his situation and moved for a continuance—or had Spagni taken any steps to acknowledge that he was required to appear on

the charges against him and needed to remedy his anticipated absence—the Court might reach a different conclusion. He did not, and so the Court finds that Spagni has not established by clear and convincing evidence that he poses no risk of flight and would appear at future court proceedings.[2]

The Court also finds that Spagni has not shown by clear and convincing evidence that any of the special circumstances he proposes establish a "pressing" and "plain" justification for release. *In re Klein*, 46 F.2d at 85. Spagni first emphasizes the particular risk of contracting COVID-19 in a custodial setting which, he argues, is more likely to result in severe illness for him because of his chronic asthma and obesity. Since the first weeks of the pandemic, courts have recognized that detention facilities "present[ ] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *United States v. Kennedy*, 449 F. Supp. 3d 713, 715–16 (E.D. Mich. 2020) (alteration in original) (quoting Centers for Disease Control, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020)).[3] Many courts have considered the relevance of asthma and other respiratory conditions in motions for pretrial, prehearing, and compassionate release during the pandemic, and some courts have found release justified based on a combination of factors, including the person's particular health status and the procedural posture of the motion for release. *See, e.g.*, *United States v. Hernandez*, No. 19 Cr. 169, 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (granting release under § 3142(i) based on "unique confluence of serious health issues and other risk factors" including age, asthma, and high blood pressure); *United States v. Ramos*,

---

[2] Spagni's proposal that he live with a third-party custodian and be subject to location monitoring does not address Spagni's intentional failure to appear in court.

[3] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Aug. 18, 2021).

450 F. Supp. 3d 63, 64–65 (D. Mass. 2020) (granting motion to reconsider pretrial detention decision and ordering release based on defendant's proof of diabetes and moderate-to-severe asthma). Most courts considering this issue in a comparable procedural context—where the defendant bears the burden of proof and must provide clear and convincing evidence that release is warranted—have denied release. *See, e.g.*, *United States v. Perez*, Crim. Nos. 15-10256, 18-40034, 2020 WL 1991161, at *4–5 (D. Mass. Apr. 22, 2020) (denying motion for release pending trial and supervised release violation hearing where defendant's asthma was adequately controlled by medication and prison was taking measures to reduce infection risk); *United States v. Pate*, No. 8:17-cr-00236-PWG-1, 2020 WL 1694368, at *3 (D. Md. Apr. 7, 2020) (denying motion for reconsideration of bond pending supervised release revocation hearing based on defendant's asthma and vulnerability to complications of COVID-19); *United States v. Santana*, No. 1:19-CR-251, 2020 WL 1692010, at *6 (M.D. Pa. Apr. 7, 2020) (finding in § 3142(i) analysis that "the rising tide of current case law suggests that a diagnosis of asthma which is controlled through medication, standing alone, will not provide a compelling reason to overcome the presumption in favor of pretrial detention that exists when a defendant is indicted for serious and significant drug trafficking offenses . . ."). Deputy Marshal Allen testified that Spagni has access to his inhaler twice a day and can ask for more frequent access by requesting a medical call in the detention facility. Spagni has also stated that he is now vaccinated against COVID-19. The Court recognizes that there is no fail-safe way to avoid contracting COVID-19, particularly in a custodial environment, but Spagni's concerns do not rise to the level of special circumstances.

Spagni next argues that he is likely to defeat extradition because the South African government will not be able to establish probable cause that he committed the charged offenses. A "high probability of success" may constitute a special circumstance warranting bail. *See Salerno*

*v. United States*, 878 F.2d 317, 317 (9th Cir. 1989). On this point, Spagni argues principally that "South African authorities have no means to prove that Spagni was the recipient or beneficiary of the allegedly fraudulent proceeds" because relevant bank records were lost in a 2009 fire. (Doc. No. 6, PageID# 46.) The South African prosecutor responds that it has electronic records indicating that Spagni was the account holder. (Doc. No. 13-1.) This point may be argued further at the extradition hearing. At this stage, however, Spagni has not established a likelihood of success justifying release by clear and convincing evidence.

Finally, Spagni argues that there is a lack of diplomatic necessity that he be held pending extradition because South African authorities have not prioritized Spagni's prosecution and because bail is available to people charged with fraud in South Africa and in the United States. The record before the Court shows that, although the South African authorities did not formally charge Spagni until 2017, all delays in the prosecution since that time have been at his request because of his COVID-19-related concerns. Further, although bail is available for fraud offenses in both countries, Spagni has offered other evidence to show that a person charged with failing to appear at trial in South Africa will be held without bail until he appears and "satisfies the court that his failure was not due to fault on his part[.]" (Doc. No. 15-1, PageID# 170, ¶ 55.2 (quoting Criminal Procedure Act 51 of 1977 § 170 (S. Afr.)).) Again, Spagni has not established by clear and convincing evidence that these circumstances justify release.

## IV. Conclusion

For these reasons, the Court ORDERS that Spagni be detained pending further extradition proceedings. That detention is subject to strict time limits. The extradition treaty between the United States and South Africa establishes that "[a] person who is provisionally arrested may be discharged from custody upon the expiration of sixty (60) days from the date of provisional arrest

pursuant to this Treaty if the executive authority of the Requested State has not received the documents required [from the Requesting State.]" Extradition Treaty Between the Government of the United States of America and the Government of the Republic of South Africa, U.S.-S. Afr., Sept. 16, 1999, T.I.A.S. No. 13060 art. 13.4. The sixty-day period expires on September 19, 2021. If the United States has not notified the Court that it has received the required documents by that date, the Court will order Spagni released from custody.[4]

Spagni is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Spagni must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[4] Under the applicable federal statute, Spagni may not remain in custody on a provisional arrest for more than ninety days, or no longer than October 19, 2021. 18 U.S.C. § 3187.